UNITED STATES of America,

v.

**Angelo PACCIONE, Anthony Vulpis, John McDonald, A & A Land Development, W & W Properties, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., and Vulpis Brothers, Ltd., Defendants.**

No. SSS 89 Cr. 446 (CBM).

United States District Court,
S.D. New York.

April 30, 1990.

See also, D.C., 730 F.Supp. 1237.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City by Elliot Peters, Deirdre Daly, and Kevin Ford, Asst. U.S. Attys., for the U.S.

Newman & Schwartz, New York City by Gustave Newman and Deborah Schwartz, for defendant Paccione.

Benjamin Brafman, P.C., New York City by Benjamin Brafman, for defendant Vulpis.

Robert Kasanof, New York City by Robert Kasanof and Edward Chikofsky, for defendant McDonald.

## OPINION ON DEFENDANTS' MOTIONS TO DISMISS

MOTLEY, District Judge.

### BACKGROUND

Indictment 89 Cr. 446 was filed on June 15, 1989. A superseding indictment adding Defendant McDonald was filed on August 24, 1989. The superseding indictment charges defendants with the following: substantive and conspiracy violations of the Racketeer Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. Sections 1962(c) and (d), through a "pattern of racketeering activity" and mail and wire fraud violations of 18 U.S.C. Section 1341. The RICO counts of that superseding indictment alleged twenty-two racketeering acts, including mail fraud on New York City and State government agencies, mail and wire fraud on CSX Transportation Inc. ("CSX") and mail fraud on doctors and medical care facilities. A superseding indictment removing, *inter alia*, Racketeering Acts 19–22, alleging acts of mail fraud on several doctors and a nursing home, was filed on February 6, 1990. A further superseding indictment, removing Racketeering Act 1(d) and the corresponding Count 6—an alleged act of mail fraud against the City of New York—and adding two mailings to Racketeering Act 4, Acts 4(a) and

(b) corresponding to new Counts 8 and 9—alleging acts of mail fraud against CSX Realty, was filed on March 8, 1990.*

Defendants have moved pursuant to Fed. R.Crim.P. 12 and 41 for the following:

1) dismissal of Counts One and Two of the indictment (the RICO counts) on the grounds that they are unconstitutionally vague;

2) dismissal of the RICO counts or striking of Racketeering Acts 1–2 and 5–22 on the grounds that environmental crimes are not authorized RICO predicate acts;

3) dismissal of Counts 3–8 of the indictment, alleging mail fraud against the City of New York on the grounds that they are based on insufficient evidence;

4) dismissal of Racketeering Acts 1–2 and 5–22 and Counts 3–8 of the indictment on the grounds that the conduct alleged does not constitute mail fraud;

5) dismissal of the RICO counts on the grounds that there is no separation alleged between the enterprise and the persons conducting the affairs of the enterprise;

6) dismissal of the RICO counts on the grounds that the indictment does not allege a proper enterprise;

7) severance of the trial of Angelo Paccione and Anthony Vulpis from John McDonald on the grounds that severance is required under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and that their defenses will be antagonistic and mutually exclusive;

8) suppression of the evidence seized pursuant to the search warrants on the grounds that the warrants authorized a general search in violation of the Fourth Amendment's particularity clause; .

9) suppression of evidence seized pursuant to allegedly warrantless searches.

Defendant John McDonald has also moved pursuant to Fed.R.Crim.P. 12(b)(3) for suppression of statements allegedly

made by Defendant McDonald on or about July 19, 1989.

For the following reasons, these motions are denied.

ANALYSIS

1. The RICO Statute Is Not Unconstitutionally Vague

■ Defendants have moved to dismiss Counts One and Two of the indictment (the RICO substantive and conspiracy counts) on the ground that the RICO statute is unconstitutionally vague. Defendants assert that the terms "pattern of racketeering activity", "enterprise" and "association" with the enterprise are so vague as to provide little or no notice to any person of what conduct is prohibited and that the statute has provided neither content nor standard for determining what these terms mean, nor have the courts provided any meaningful limitation.

Relying extensively on dicta in Justice Scalia's concurring opinion in *H.J., Inc. v. Northwestern Bell Telephone Co.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), defendants maintain that the terms "pattern of racketeering" activity, "enterprise," and "association" with the enterprise, are concepts so vague as to violate the notice to defendants requirement that the due process clause of the Fifth Amendment imposes on all federal criminal statutes. Defendants also complain that the vagueness of the statute's language, especially as to the meaning of "association" with the enterprise, is such as to give to the prosecutors impermissible discretion as applied to this case.

In *H.J., Inc.,* the Court defined the term "pattern of racketeering" which requires proof by the prosecution of at least two predicate acts, as enumerated in the RICO statute, as consisting of two components: (1) relatedness and (2) continuity.

RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering

---

* Since the changes made in the two superseding indictments following the court's January 27, 1990 Order denying the motions discussed in this Opinion do not affect Defendants' arguments, this Opinion will refer to the Racketeering Acts and Counts of the first superseding indictment ("the indictment").

predicates are related, and that they amount to or pose a threat of continued criminal activity. For analytic purposes these two constituents of RICO's pattern requirement must be stated separately, though in practice their proof will often overlap. The element of relatedness is the easier to define, for we may take guidance from a provision elsewhere in the Organized Crime Control Act of 1970 (OOCA), Pub.L. 91–452, 84 Stat. 922, of which RICO formed Title IX. OCCA included as Title X the Dangerous Special Offender Sentencing Act, 18 U.S.C. Section 3575 et seq. (now partially repealed). Title X provided for enhanced sentences where, among other things, the defendant had committed a prior felony as part of a pattern of criminal conduct. As we noted in *Sedima [v. Imrex Company, Inc.]*, 473 U.S. [479], at 496, n. 14 [105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346], Congress defined Title X's pattern requirement solely in terms of the relationship of the defendant's criminal acts one to another: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. Section 3575(e) ... RICO's legislative history tells us, however, that the relatedness of racketeering activities is not alone enough to satisfy Section 1962's pattern element. To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity ... "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. See *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear to one another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. See S.Rep. No. 91–617, at 158.

Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case. Without making any claim to cover the field of possibilities—preferring to deal with this issue in the context of concrete factual situations presented for decision—we offer some examples of how this element might be satisfied. A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit. Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, telling his victims he would be reappearing each month to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity. In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally

grouped under the phrase "organized crime." The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO "enterprise."

*Id.,* 109 S.Ct. at 2900–02.

The Court construed the term "pattern" as requiring plaintiffs or prosecutors to prove "... continuity of racketeering activity, or its threat, simpliciter. This may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." *Id.,* 109 S.Ct. at 2901.

The term "pattern of racketeering" had been previously defined by the Second Circuit as requiring similar proof. Very recently in *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989), this Circuit, en banc, defined the meaning of the term "pattern of racketeering", which definition is binding on this Court:

> [P]roof of two acts of racketeering activity without more does not suffice to establish a RICO pattern; ... the concepts of relatedness and continuity are attributes of activity, not of a RICO enterprise, and.... *a RICO pattern may not be established without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity;* ... a pattern may be established without proof of multiple schemes, multiple episodes, or multiple transactions; and ... racketeering acts that are not widely separated in time or space may nonetheless, given other evidence of the threat of continuity, constitute a RICO pattern.

*Id.* at 1381. (emphasis added)

> The degree to which these factors establish a pattern may depend on the degree of proximity, or any similarities in goals or methodology, or the number of repetitions. Congress' elaboration on the concept of pattern in connection with its provision in 18 U.S.C. Section 3575(e) for

dangerous special offenders is instructive. As discussed in *Sedima's* footnote 14, [*Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482 (2d Cir.1984), rev'd, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)] that section provided that criminal conduct would form a pattern if it embraced criminal acts that had for example, "the same or similar purposes, results, participants, victims, or methods of commission." 18 U.S.C. Section 3575(e) (1982), *repealed by* Sentencing Reform Act of 1984, Pub.L. No. 473, tit. II, Sections 212(a)(1) and (2), 235(a)(1), 98 Stat. 1987, 2031.

*Indelicato,* at 1382.

The allegations in the indictment in this case satisfy the *Indelicato* requirements. The Government alleges in the indictment that the racketeering acts are interrelated and that there is a threat of continuity, if not continuity in fact. "The validity of the indictment is to be tested by its allegations, not by defense counsel's forecast of the ... evidence," so that a technically sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *United States v. Black,* 291 F.Supp. 262, 264 (S.D. N.Y.1968) (Weinfeld, J.)

Lower federal courts have found the specific provisions challenged by defendants here as well as other related provisions not to be vague. *United States v. Tripp,* 782 F.2d 38, at 41–42 (6th Cir.1986) (rejecting contention that definition of "racketeering activity" is void for vagueness); *United States v. Ruggiero,* 726 F.2d 913, 923 (2d Cir.1984); *United States v. Scotto,* 641 F.2d 47, 52 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981); *United States v. Huber,* 603 F.2d 387, 393 (2d Cir.1979), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *United States v. Swiderski,* 593 F.2d 1246 (D.C.Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979) (Section 1962(c) not vague and, in particular, terms "enterprise," "employed by or associated with," "directly and indirectly in the conduct of such enterprise's affairs through a pattern of racketeering

activity," and "pattern of racketeering activity," not vague; *United States v. Castellano*, 416 F.Supp. 125, 128 (E.D.N.Y.1975); *United States v. Scalzitti*, 408 F.Supp. 1014 (W.D.Pa.1975), appeal dismissed without opinion, 556 F.2d 569 (2d Cir.1977) ("conduct of affairs" language of Section 1962(c) not vague); *United States v. Stofsky*, 409 F.Supp. 609, 612–14 (S.D.N.Y. 1973) ("conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity" not vague) *aff'd*, 527 F.2d 237 (2d Cir.1975), *cert. denied*, 429 U.S. 819, 97 S.Ct. 66, 50 L.Ed.2d 80.

Although the aforementioned cases were decided prior to *H.J. Inc.*, RICO's statutory requirement of an "enterprise", "association with the enterprise" and "a pattern of racketeering activity" have not changed since these cases were decided; thus, these cases still have precedential value.

Justice Scalia concurring in the result in *H.J., Inc.* assessed the definitional problems pertaining to the "pattern" requirement in the RICO statute and rejected the majority's definition as inadequate. He opined that the definitional difficulties, as the Court's opinion demonstrates, *may* make the RICO statute vulnerable to future constitutional attack.

The Second Circuit has also previously construed "enterprise", and "association" with an enterprise.

> In discussing the relationship between "pattern" and "enterprise" in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), the Court had stated as follows:
>
> > In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. [Section 1961(1).] The former is proved by evidence of an

ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.... While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

*Id.*, cited in *U.S. v. Indelicato*, 865 F.2d 1370, 1376 (2nd Cir.1989).

The statute defines enterprise clearly.

18 U.S.C., Section 1961(4) reads as follows:

> (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

As discussed, infra, at pages 704–705 the indictment properly alleges the existence of an enterprise. It specifically identifies "the enterprise" to include: the individual defendants, Angelo Paccione, Anthony Vulpis, John McDonald, and Fred E. Weiss; the defendant partnerships, A & A Land Development and W & W Properties; and the defendant corporations, August Recycling, Inc., National Carting, Inc., Stage Carting, Inc., New York Environmental Contractors, Inc., Rosedale Carting, Inc., and Vulpis Brothers, Ltd.

Although defendants would have this court believe that the theoretical permutations and boundaries of the words "associated with an enterprise" are indiscernible, the Government has alleged that such relationships exist in this case as a matter of fact.

Title 18 U.S.C. Section 1962(c) provides as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly

or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

■ If the Government satisfactorily proves defendants' participation in or conduct of the enterprise's affairs through a pattern of racketeering activity as the statute requires, the Government will have satisfied the "associated with" requirement. *U.S. v. Biaggi,* 672 F.Supp. 112, 121 (S.D.N.Y.1987) citing *Alfaro v. E.F. Hutton Co.,* 606 F.Supp. 1100, 1116 (E.D.Pa.1985). Whether or not defendants and their actions constituted an enterprise, or were associated with an enterprise, are matters of fact which the Government must prove at trial. Quite simply, as the cases demonstrate, courts have offered guidance in construing the statute.

Again, it should be noted, that a void for vagueness issue was not raised in *H.J., Inc.* One such claim had been recently raised and rejected by the Supreme Court in *Fort Wayne Books, Inc.,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), with respect to a similar Indiana statute which used state obscenity statutes as predicate offenses. In *Fort Wayne Books, Inc.,* 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), the defendant was charged with RICO offenses under the Indiana statute where the underlying acts were violations of the state's obscenity statutes. The Indiana statute had been modeled after the federal RICO statute. On appeal, the defendant challenged the use of state obscenity statute violations as a basis for the state RICO prosecution and challenged the state RICO statute itself on vagueness grounds. The Supreme Court held in *Fort Wayne Books, Inc.* that "if the [predicate offenses are] not unconstitutionally vague, [RICO] cannot be vague either." *Accord United States v. Ruggiero,* 726 F.2d 913, 923 (2d Cir.1984) *cert. denied,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984).

■ Defendants in the instant case, unlike the defendant in *Fort Wayne Books, Inc.,* make no claim that the predicate offenses here (mail and wire fraud) are themselves unconstitutionally vague. This court will not disregard settled case law in this area. In this case defendants are charged with predicate mail fraud and wire fraud offenses. What constitutes mail fraud and wire fraud is well defined in this Circuit and the mail fraud and wire fraud statutes. Defendants, taking up Justice Scalia's invitation, urge this court to consider Justice Scalia's warning in *H.J.* as a self-fulfilling prophecy wholly applicable in the instant situation and to declare the RICO statute void for vagueness. Under the due process vagueness doctrine

> The relevant inquiry is whether the statute is so vague that a person could not reasonably understand that the contemplated conduct, as charged in the Indictment, would be proscribed by the statute ... [and] [i]n determining the sufficiency of the notice a statute must, of necessity, be examined in the light of the conduct with which a defendant is charged.

*United States v. Boffa,* 513 F.Supp. 444, 461 (D.Delaware 1980) (emphasis added); *See United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1953) (defendant must show that statute is vague as applied to specific conduct charged against him). *Accord, New York v. Ferber, supra,* 458 U.S. 747, 767–768, 102 S.Ct. 3348, 3359–61, 73 L.Ed.2d 1113 (1982); *United States v. Powell,* 423 U.S. 87, 92–94, 96 S.Ct. 316, 319–21, 46 L.Ed.2d 228 (1975); *United States v. Mazurie,* 419 U.S. 544, 550, 553, 95 S.Ct. 710, 714, 715, 42 L.Ed.2d 706 (1975); *National Dairy Corp.,* 372 U.S. 29, at 31–33, 36, 83 S.Ct. 594, 597–98, 599, 9 L.Ed.2d 561 (1963). *See also, United States v. Cintolo,* 818 F.2d 980, 996–997 (1st Cir.1987); *United States v. Smith,* 680 F.2d 255, 258–259 (1st Cir.1982). The test the court is concerned with here is whether the statute conveys an adequate warning as applied in a specific situation. *United States v. Parness,* 503 F.2d 430, 442 (2d Cir.1974), *cert. denied,* 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975).

Since the specific allegations in the indictment here and settled precedent remove this case from Justice Scalia's foreboding analysis, this court declines defendants' invitation. The court holds that the relevant governing constitutional principles and set-

tled precedent control this issue and that the RICO statute is constitutional as applied to the defendants in the instant case.

## 2. Environmental Crimes as Predicate Acts

■ Defendants argue that the "gravamen of this indictment is unquestionably the commission of environmental crimes." *Defendants' Joint Memorandum of Law in Support of Their Motions* ("Jt. Memo") at 13. They point specifically to the indictment's characterization of their participation in the conduct of the alleged RICO enterprise as consisting of the operating of an illegal landfill and the illegal " 'transferring, storing and disposing of medical and infectious waste.' " *Jt. Memo* at 13, citing the indictment at Paragraph 10. Defendants then observe that environmental crimes are not found in the statutory list of offenses that can constitute predicate racketeering activity under the RICO statute. They contend that the Government has circumvented the express limitations of RICO by characterizing defendants' alleged environmental misconduct as mail or wire fraud. Citing the concerns expressed by the Second Circuit in *United States v. Porcelli*, 865 F.2d 1352 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), defendants claim that the instant indictment pushes RICO beyond its outer limits and ask that Racketeering Acts 1–2 and 5–22 be dismissed. The court disagrees and denies the request.

The question of whether mail or wire fraud is properly alleged in the instant indictment is addressed below. Defendants argue, however, that regardless of whether mail or wire fraud is properly alleged, Racketeering Acts 1–2 and 5–22 should be dismissed. This position simply ignores the language of the RICO statute which includes mail and wire fraud as predicate acts constituting racketeering activity. 18 U.S.C. Section 1961(1). The allegations of mail and wire fraud are not invalidated as predicate acts because the alleged enterprise is accused of violations of environmental laws as well.

Nothing in the decisions of this Circuit suggests that mail or wire fraud, properly alleged, in the conduct of an enterprise cannot be included as racketeering activity because the enterprise is alleged to have engaged in violations of regulatory schemes which do not constitute racketeering activity on their own. As the Government explains, the decision in *United States v. Porcelli*, 865 F.2d 1352 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), actually undermines defendants' argument. In *Porcelli,* the Government sought to use the mail fraud statute to prosecute a state sales tax evader under RICO where the tax evasion involved did not even violate any state criminal statutes. The Court approved this use of mail fraud as racketeering activity "by virtue of the extraordinarily broad sweep of RICO and the federal mail fraud statute." *Id.* at 1355. Contrary to defendants' contention, the existence of environmental regulatory schemes, including criminal penalties, does not somehow "preempt" the use of properly stated allegations of mail fraud as racketeering activity in charging a violation of RICO because violations of that environmental regulatory scheme are also implicated. The indictment in this case is not merely an instance of the Government using the mail fraud statute, and thereby RICO, to add counts "in an indictment the gravamen of which was the violation of other federal criminal statutes." *United States v. Mangan,* 575 F.2d 32, 49 (2d Cir.), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978), citing *United States v. Dixon,* 536 F.2d 1388, 1398–1401 (2d Cir. 1976). No other federal criminal violations are listed in the counts of the indictment, and, as explained below, the mail fraud and RICO counts are properly alleged.

The Second Circuit's decision in *United States v. Ivic,* 700 F.2d 51 (2d Cir.1983) in no way undermines a broad approach to the use of mail fraud as a RICO predicate. In that case, the Court found no "enterprise" because the defendants, Croatian nationalists, were seeking to advance political goals, not to make a profit. Clearly, defendants in the instant case are alleged to

have participated in a profit-making enterprise.

### 3. Sufficiency of the Evidence of Counts Three Through Eight

▋ Defendants argue that, as a matter of law, there is insufficient evidence alleged in the indictment for mail fraud against the City of New York. Defendants observe that in a mail or wire fraud prosecution, the Government must allege a "scheme or artifice to defraud," and that the Government must offer proof that defendants possessed a "fraudulent intent," and, specifically, that defendants contemplated some actual harm to their victims. Misrepresentation amounting to deceit but without contemplated harm does not constitute mail or wire fraud. *See United States v. Starr*, 816 F.2d 94 (2d Cir.1987); *United States v. Regent Office Supply*, 421 F.2d 1174 (2d Cir.1970).

In Counts 3–8, defendants are charged with scheming fraudulently to deprive the City of licensing and dumping fees. Defendants argue that the Government's allegations rest on the assumption that defendants were under an obligation to dump in City landfills and that by not doing so they were depriving the City of fees. Defendants then contend that since no such obligation to dump, and hence no obligation to pay fees, existed, there was no "'discrepancy between benefits reasonably anticipated because of the misleading representations [i.e. payment of fees] and the actual benefits which the defendants delivered, or intended to deliver.'" *Jt. Memo* at 20, citing *Regent Office Supply Co.*, 421 F.2d at 1182. The court disagrees.

The Second Circuit has established that "an indictment need do little more than to track the language of the statute charged and state the time and place ... of the alleged crime." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.) (citations omitted), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). *See United States v. Citron*, 783 F.2d 307, 314 (2d Cir.1986); *United States v. Covino*, 837 F.2d 65 (2d Cir.1988); *United States v. Carr*, 582 F.2d 242, 244 (2d Cir.1978). The

instant indictment clearly meets this test. As shown below, the indictment makes factual allegations which the Government will have to prove at trial concerning misrepresentations by defendants and their intentions to deprive the City of licensing and dumping fees. In so alleging, the Government has satisfied its responsibilities at this stage. It is, as the Government states, well established that an "indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956); *see United States v. Scacchetti*, 668 F.2d 643, 646 (2d Cir.), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982). As this court has stated, per Judge Weinfeld, a facially sufficient indictment "is not subject to dismissal on the basis of factual questions, the resolution of which must await trial." *United States v. Black*, 291 F.Supp. 262, 264 (S.D.N.Y.1968).

The problem with defendants' argument is that the indictment is not flawed on its face. The Government has properly alleged that defendants engaged in a scheme to defraud the City of licensing and dumping fees through the use of misrepresentations concerning their intentions to operate a landfill legally within the City. According to the indictment, defendants alleged misrepresentations concerning the nature of their landfill operation served a scheme in which they dumped illegally within the City. In dumping illegally within the City, the indictment alleges, defendants did not pay fees they would have been obliged to pay had they dumped legally within the City. The Government need not allege a contractual or fiduciary obligation to dump within the City to assert that those who have in fact dumped evaded paying fees associated with legal dumping operations. Whether Defendants actually committed such misrepresentations, whether they conducted such an illegal dumping operation, and whether they would otherwise have dumped legally within New York City are questions of fact to be proved by the prosecution at trial.

Defendants' reliance on the Second Circuit's decision in *United States v. Starr*, 816 F.2d 94 (2d Cir.1987), is unavailing. In *Starr*, the Second Circuit reversed a conviction where it held evidence of mail fraud to be insufficient because the court found no evidence that the defendants had intended to harm the customers they had deceived. While *Starr* establishes rules of law concerning the requirements of proof under the mail fraud statute, it, like the Second Circuit's decision in *United States v. Regent Office Supply*, 421 F.2d 1174 (2d Cir. 1970), addresses the evidence that the Government in fact presented at trial, not the allegations on the face of the indictment. In *Starr*, the court essentially found that the Government had identified the wrong party as the victim; in *Regent Office Supply*, the court found that the defendants deceived the alleged victims but not in a way which, on the facts presented at trial, evidenced an intent to harm them. Under both these cases, therefore, the Government will be required at trial to proffer sufficient evidence of an intent by defendants to harm the City by depriving it of fees. *See, e.g., United States v. Gelb*, 881 F.2d 1155, 1162–63 (2d Cir.1989) (distinguishing *Starr* where defendants charged with depriving Postal Service of postage). However, it is not for this court to anticipate whether the Government's evidence on this or any other material issue will prove sufficient.

The court therefore declines to dismiss the counts in question in the instant indictment, leaving it to the Government to proffer sufficient evidence of intent to defraud at trial.

**4. The Conduct Alleged Constitutes Mail Fraud under *McNally***

Defendants argue that, with the exception of Racketeering Acts 3 and 4, the conduct alleged in the instant indictment does not constitute mail fraud under the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875,

97 L.Ed.2d 292 (1987), because the alleged victims were not deprived of money or property. Specifically, with respect to the allegations of mail fraud against the City and State, defendants argue 1) that permits are not property within the meaning of the mail fraud statute as interpreted under *McNally* and 2) that the Government's allegation that defendants fraudulently schemed to deprive the City and State of licensing fees is factually and legally specious because defendants, in fact, paid licensing fees and therefore did not deprive the City of money. In sum, defendants argue that any injury suffered by the City or State was in their capacity as regulators not property holders and was, therefore, not a cognizable deprivation under the mail fraud statute. They therefore request that Racketeering Acts 1–2, 5–12 and Counts 3–8 be dismissed.

Defendants also maintain that the Government has not alleged a scheme to deprive generators of medical waste of money or property as required in *McNally*. Defendants contend that, as they argue with respect to Counts 3–8, there is insufficient evidence as a matter of law to support the charge that defendants intended to deprive the medical waste generators in question of any money or property. In short, defendants, at worst, deprived these waste generators of the "intangible right to honest services," a deprivation not recognized under *McNally*. Defendants deny, *inter alia*, that their alleged actions exposed these generators to civil or criminal liability. They also maintain that the indictment alleges no new misrepresentations after November 18, 1988, the effective date of the provision making deprivation of the "intangible right of honest services," a violation of the mail fraud statute.[**] Defendants therefore request that Racketeering Acts 13–22 and Counts 9–11 be dismissed.

In *McNally v. United States*, 483 U.S. 350, 356, 107 S.Ct. 2875, 2879, 97 L.Ed.2d 292 (1987), the Supreme Court held that the federal mail fraud statute "clearly protects property rights, but does not refer to the

[**] As the court agrees with the Government's contention that it has properly alleged a deprivation of property of the medical waste generators, there is no need to analyze the post-amendment mailings alleged.

intangible right of the citizenry to good government." Congress subsequently amended the statute by enacting 18 U.S.C. Section 1346, effective as of November 18, 1988, which provides that "the term 'scheme or artifice to defraud' [as used in the mail fraud statute] includes a scheme or artifice to deprive another of the intangible right of honest services." Much of the conduct at issue in the instant case occurred before the enactment of Section 1346. The Government does not deny the applicability of *McNally* to the mail fraud allegations before November 18, 1988, but insists that the indictment alleges a scheme to defraud the City and State and various medical waste generators of money or other property.

For the following reasons, the court agrees with the Government and denies defendants' requests to dismiss the Racketeering Acts and Counts in question.

■ While the *McNally* Court required an intended property deprivation, it did not define property. In *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), however, the Court made it clear that both tangible and intangible property are included under *McNally*. *See also United States v. Grossman*, 843 F.2d 78, 86 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 864, 102 L.Ed.2d 988 (1988) (law firm has property interest in confidential information). The relevant inquiry under *McNally*, therefore, is not whether the interest in question is tangible or intangible, but whether it is a property interest and not merely an interest in honest services.

■ Citing several cases from other circuits, defendants contend that permits, licenses, and contracts awarded by government agencies are not property under the mail fraud statute. However, this position is not supported by the weight of case law within this Circuit. In *United States v. Biaggi*, 675 F.Supp. 790, 801–02 (S.D.N.Y. 1987), for example, this court held that the right of a government agency to award millions of dollars in contracts is a property interest under the mail fraud statute. As this court observed in *Biaggi, id.* at 800–01,

the *McNally* Court, in describing ways the jury was not charged in that case, implied that the federal mail fraud statute includes schemes 1) to defraud the Government of money or property, 2) to have the Government pay more for a service or for poorer service than otherwise, or 3) to deprive the Government of control over how it spends its money. *See McNally*, 483 U.S. at 360, 107 S.Ct. at 2881.

This third possible basis for a mail fraud claim, deprivation of control over the spending of money, served as the basis for this court's decision in *Biaggi* and applies as well to the State permit in the case at hand. As the Government argues, the licensing scheme for medical waste implicates far more than the Government's mere regulatory interests because of the State's exposure to the costs of cleaning up hazardous waste improperly disposed of. The issuance of permits directly protects the State's money. When the State loses control over the disbursement of permits because of fraud, it is effectively being deprived of control over the expenditure of its money.

Other courts in this Circuit have reached similar results following the *Biaggi* decision. In *United States v. Turoff*, 701 F.Supp. 981 (E.D.N.Y.1988), Judge Glasser held that taxi medallions wrongfully taken from the City are property. In *United States v. Berg*, 710 F.Supp. 438 (E.D.N.Y. 1989), Judge Platt held that licenses to export arms from the United States are property. *But see United States v. Ferrara*, 701 F.Supp. 39, 42 (E.D.N.Y.1988) (licenses to practice medicine not property for purposes of mail fraud statute), *aff'd without opinion*, 868 F.2d 1268 (2d Cir. 1988). In contrast, other circuits have found various licenses and permits not to be property for purposes of the mail fraud statute. *See United States v. Kato*, 878 F.2d 267 (9th Cir.1989) (pilots' licenses not property); *Toulabi v. United States*, 875 F.2d 122 (7th Cir.1989) (taxi drivers' licenses not property); *United States v. Murphy*, 836 F.2d 248 (6th Cir.) (bingo permits not property), *cert. denied*, 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988).

However, none of these licenses or permits implicates the governmental budget, at least in as direct a way as is present in this case. Also, each of these decisions seems to regard the licenses or permits in question as property, in fact, items of significant value, in the hands of the recipients, but not in the hands of the Government. This position directly contradicts the implication in *McNally*, as developed in *Biaggi*, that the Government has a property interest in control over the expenditure of its money, and hence over the distribution of items of value.

Defendants' reliance on the Second Circuit's decision in *United States v. Evans*, 844 F.2d 36 (2d Cir.1988), is misplaced. *Evans* held that the federal government has no property interest in the resale or retransfer of U.S. military weaponry from one foreign nation to another. This holding does not conflict with the view that a government agency has a property interest in the disbursement of its resources. It merely establishes that, under some circumstances, it does not have a property interest in their future alienation once disbursed.

▮ In addition, as the Government observes, defendants' allegedly fraudulent means of obtaining the permits in question were part of an alleged scheme to defraud the Government of actual fees and to defraud others of money and other property interests as well. The court now turns to those allegations each in turn.

Defendants characterize the Government's allegations that they schemed to defraud the City and State of licensing fees, as opposed to licenses, as "juridical hairsplitting." This court cannot agree. According to the Government, defendants never acquired licenses, and, therefore, did not pay the appropriate licensing fees for the kind of landfill they actually operated. While the Government admits that defendants did, in fact, pay licensing fees, it contends that those fees were not paid for the kind of operation conducted. Therefore, the Government was deprived of fees for the actual operation. Clearly, schemes to defraud government agencies of money

in the form of fees can properly be charged under the mail fraud statute. *See United States v. Gelb*, 881 F.2d 1155, 1162–63 (2d Cir.1989); *United States v. Porcelli*, 865 F.2d 1352, 1359–62 (2d Cir.1989); *United States v. King*, 860 F.2d 54 (2d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2062, 104 L.Ed.2d 628 (1989); *Ingber v. Enzor*, 664 F.Supp. 814, 822 (S.D.N.Y.1987), *aff'd*, 841 F.2d 450 (2d Cir.1988). The fact that the agencies received other fees does not give cause to dismiss the Government's charges with respect to the unpaid fees.

Defendants' reliance on the Second Circuit's decision in *Corcoran v. American Plan Corp.*, 886 F.2d 16, 20–22 (2d Cir. 1989) is unavailing. In that case, the court found that the plaintiff, the State Superintendent of Insurance, had not even attempted to allege that the State had any property interest in the money allegedly stolen by the defendants.

▮ In addition, defendants' alleged fraudulent evasion of licensing fees threatens other pecuniary interest of the City and State. By allegedly evading licensing fees, defendants sought to sidestep a licensing system which safeguards substantial monetary interest of the City and State. As the Government indicates, state and local regulations expose the City and State to paying the costs of cleaning up environmental disasters such as those alleged here. *See, e.g.*, N.Y.Envtl.Conserv.Law, Article 27, Title 13; N.Y.C.Admin.Code, Title 24, Chapter 6. If the property owners cannot clean up such a disaster, the City and State will be required to do so at great cost. Such exposure falls within the coverage of the federal mail fraud statute.

Defendants' arguments concerning the deprivation of dumping fees repeat those made to request dismissal of Counts 3–8: that there is insufficient evidence as a matter of law that defendants intended to defraud the City of dumping fees. For the reasons given above, this argument fails to persuade.

▮ Finally, defendants contend that the indictment fails to allege a scheme to defraud the generators of medical waste

of property. Defendants argue that they are accused of scheming to deprive their medical waste customers of the honest services for which they thought they were contracting, i.e. dumping their waste at approved sites. Relying on *United States v. Starr*, 816 F.2d 94 (2d Cir.1987) and *United States v. Regent Office Supply*, 421 F.2d 1174 (2d Cir.1970), defendants claim that it is not enough for the Government to allege that these customers were deceived with respect to the bargain they were entering with these defendants. They also claim that these customers were not exposed to any potential liability by defendants' alleged use of unapproved sites.

Once again, the decisions in *Starr* and *Regent Office Supply*, prove unavailing to defendants. In both of those cases, the Second Circuit examined the evidence presented by the Government at trial and found it insufficient to show harm to the customers. The court did not hold that as a matter of law one cannot scheme to defraud a customer by misrepresenting a material part of a bargain. Whereas the Government failed to show that the customers in *Starr* and in *Regent Office Supply* did not receive the services they paid for, the Government may be able to do so at trial here. In the instant case, unlike those relied on by defendants, the customers arguably bargained for a highly specialized kind of service, the legal dumping of the medical waste they generated. The value of legal dumping to a generator of medical waste arguably might lie in its importance to its business reputation or in potential exposure to civil or criminal liability. As the *McNally* Court implied, if the alleged victim would have paid less or received better quality services absent the alleged deceit, then mail fraud has been properly charged. *See McNally v. United States*, 483 U.S. at 360, 107 S.Ct. at 2881. These are questions of fact to go to the jury.

The Second Circuit's decision in *United States v. Covino*, 837 F.2d 65 (2d Cir.1988) is also not helpful to defendants. In that case, where the defendant was charged, *inter alia*, with wire fraud for violating his fiduciary duty to his employer, the court found that the indictment did not ask the jury to find that the alleged victim had been defrauded of money or peoperty. It therefore reversed the wire fraud convictions. *Id.* at 71. Clearly, in the instant indictment, the Government has alleged a scheme to deprive the medical waste generators of property and money, not merely of some fiduciary duty to dispose of the waste as promised.

In addition, while defendants claim that their alleged victims were not exposed to liability, close examination of state and local law in the relevant time period indicates otherwise. Since 1985, disposal of potentially infectious waste has been governed by provisions of the Administrative Code, currently Section 16–120.1, originally enacted as Local Laws 57 and 90. This law provides, *inter alia*, for suspensions and fines for violations of the municipal regulatory scheme. Similarly, starting in August, 1988, the State of New York issued and reissued emergency regulations, 6 NYCRR Section 364.9 (now authorized under N.Y.Envtl.Conserv.Law, Article 27, Sections 1504 and 1510 (McKinney 1990)), which regulated disposal of infectious waste and established a manifest system which generators of such waste were obliged to use. Under a state statute passed in July, 1987, 1987 N.Y.Laws Ch. 431, and amended in November, 1988, 1988 N.Y.Laws Ch. 654, (codified as amended at N.Y.Envtl.Conserv.Law, Article 71, Section 2703 (McKinney 1990)), generators of infectious waste who violated the requirements of these disposal regulations were exposed to civil and criminal penalties. Defendants' alleged activity, therefore, did expose their customers to potential liability.

For the foregoing reasons, Defendants' request that Racketeering Acts 13–22 and Counts 9–11 be dismissed is denied.

5. Failure to Allege a Proper "Enterprise"

Counts 1–2 of the indictment allege that Defendants—four individuals, two partnerships and six corporations—and their co-racketeers constituted an "enter-

prise" as defined by 18 U.S.C. Section 1961(4), that is, a group of individuals and corporations associated in fact although not a legal entity. Defendants seek to dismiss both counts on the ground that the enterprise charged is not a proper enterprise within the meaning of the RICO statute. Specifically, defendants contend that the enterprise alleged is invalid because it consists exclusively of defendants; they assert that the law prohibits a single entity from being both a defendant and the enterprise itself. Defendants also argue that a group of corporations and individual people cannot be an enterprise under RICO. The court rejects both of these arguments.

As the Second Circuit held in *Cullen v. Margiotta,* 811 F.2d 698, 729–30 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), there is "no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise.'" As the court observed, the language of 18 U.S.C. Section 1962(c) appears to envision that the same entity might be both a RICO "person" and one member of the "enterprise," by speaking of a "person ... associated with any enterprise." *Id.* at 730. That the indictment names many, or even all, of the persons in an alleged enterprise makes it thorough, not improper.

Defendants' reliance on *Bennett v. United States Trust Co.,* 770 F.2d 308 (2d Cir. 1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), is misplaced. In that case, the Second Circuit held that "a solitary entity cannot, as a matter of law, simultaneously constitute both the RICO 'person' whose conduct is prohibited and the entire RICO 'enterprise' whose affairs are impacted by the RICO person." *Cullen,* 811 F.2d at 729, citing *Bennett,* 770 F.2d at 315. In *Bennett,* the court rejected the notion that an entity may be regarded as "associated with" itself alone. *Id.* As the Second Circuit noted in *Cullen,* 811 F.2d at 730, such a holding in no way precludes the charging of entities as associated with an enterprise of which they are part. That is precisely what the instant indictment does. That the entities named in it as "persons" are alleged to be mem-

bers of the same enterprise, therefore, does not invalidate the RICO counts.

Defendants' claim that a RICO enterprise cannot include an association in fact of business and human entities is also without foundation. Nothing in the language of the statute suggests an intent to exclude this perhaps rather common form of association. If anything, the statute is broadly inclusive. The statute defines "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. Section 1961(4). This definition does not exclude an association in fact consisting of different types of entities, such as a combination of the enumerated types of entities. Such a suggested reading would perversely insulate more complex, though perhaps not uncommon, types of enterprises. In addition, the Second Circuit has held that a group of corporations may constitute a "group of individuals associated in fact" under Section 1961(4). *United States v. Huber,* 603 F.2d 387, 393–94 (2d Cir.1979) (group of corporations constituted "association in fact" enterprise), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *see also Porcelli,* 865 F.2d 1352, 1364 (2d Cir.) (group of twelve operating companies, realty companies and a management company constituted enterprise), *cert. denied,* —— U.S. ——, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The enterprise alleged in the instant indictment consists of individuals, corporations, and partnerships associated in fact. The court finds nothing improper in this allegation.

6. Severance

 Defendants Paccione and Vulpis move for a severance from the trial of co-defendant McDonald on two grounds: 1) that it is required under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), due to statements of defendant McDonald that the Government apparently intends to use at trial, and 2) that the defenses available to defendants Paccione and Vulpis, on the one hand, and

to defendant McDonald, on the other, are antagonistic and mutually exclusive, such that all defendants would be deprived of a fair trial if tried together. The court will address each of these arguments in turn.

On July 19, 1989, defendant McDonald was interviewed at his home by two agents of the FBI.*** During the interview, McDonald allegedly made various statements linking himself and defendants Paccione and Vulpis to the ownership and running of defendants New York Environmental Contractors, Inc. ("NYEC") and A & A Land Development ("A & A"). These defendants are among those charged with dumping illegal waste materials and with not dumping other waste materials at City and State approved dumping facilities.

Defendants Paccione and Vulpis argue that the admission of even redacted versions of these statements at a joint trial would violate their right to confront McDonald under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and its progeny. Specifically, defendants assert that any attempt to redact McDonald's alleged statements would be "ineffective and patently unfair" to one or more of the defendants. They contend that the substitution of the phrase "another person" for the names of the defendants would still allow the Government to link those defendants to the alleged criminal activity.

Alternatively, defendants Paccione and Vulpis ask for a complete deletion of any reference to anyone other than McDonald, so as not to connect them to the alleged crimes. However, they warn, correctly, that such a redaction might have an adverse impact on McDonald's rights.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court held that a defendant is deprived of the right to confront witnesses when a nontestifying codefendant's confession naming the defendant as a participant in the crime is introduced at their joint trial, even if the jury is instructed only to

consider the confession against the codefendant. However, in *Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court held that the Confrontation Clause permits the use of a codefendant's confession at a joint trial where the confession is redacted to omit any reference to the defendant, even though the defendant is nonetheless linked to the confession by evidence properly admitted against that defendant at trial, and where the jury is given a proper limiting instruction. Since *Richardson,* the Second Circuit has held "that a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *United States v. Tutino,* 883 F.2d 1125, 1135 (2d Cir. 1989). *See also United States v. Alvarado,* 882 F.2d 645, 652–53 (2d Cir.1989). In light of these decisions, there is no reason why the Government cannot redact the text in question in a manner which would not violate defendants Paccione and Vulpis's rights under the Confrontation Clause if introduced at a joint trial.

Defendants Paccione and Vulpis also argue that they should receive a severance because their defenses will be "antagonistic" to and "mutually exclusive" of McDonald's defense. Specifically, Paccione and Vulpis contend that they will dispute McDonald's likely assertions concerning responsibility for the running of defendant NYEC. According to defendants, the jury will be asked to believe one version and to disbelieve the other. However, such mutual assertions of responsibility do not make the requisite showing of antagonism. As the Second Circuit has stated, "A simple showing of some antagonism between defendants' theories of defense does not require severance." *United States v. Carpentier,* 689 F.2d 21 (2d Cir.1982), *cert.*

*** Defendant McDonald has moved to suppress the statements made in that interview. For the reasons given below, that motion is denied.

*denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983). There must be an antagonism at the core of the testimony offered on behalf of a defendant. *Id.* at 28, citing *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir.1981). In *Berkowitz*, the Fifth Circuit affirmed a denial of a severance motion where each defendant's defense was based on a claim of noninvolvement; each cast the other as the more active participant. Similarly, in the case at bar, the two groups of defendants may choose to point a finger at the other as the more active participant in the alleged enterprise. If so, as in *Berkowitz*, it will not be necessary for the jury to disbelieve the one in order to believe the other. There are various combinations or degrees of involvement the jury may find credible. With proper protections at trial, defendants will not be prejudiced. Given the foregoing and the strong institutional reasons for preferring a joint trial, the motion for a severance is denied.

7. The Search Warrants Were Entirely Lawful

█ On September 15, 1988, the Honorable A. Simon Chrein, United States Magistrate, Eastern District of New York, issued six search warrants for the following premises: (1) the Port Ivory Landfill, Staten Island New York; (2) the National Carting Transfer Station, 6401 9th Avenue, Brooklyn, New York; (3) the Rosedale Carting Transfer Station, 96–14 Ditmas Avenue, Brooklyn, New York; (4) the Mill Basin Transfer Station, Flatlands Avenue and East 58th Street, Brooklyn, New York; (5) the Red Ball Interior Demolition Transfer Station, 625–635 West 29th Street, New York, New York; and (6) the Mill Basin Contracting Offices, located at 1379 Utica Avenue, Brooklyn, New York. On the same day, the Honorable Michael Dolinger, United States Magistrate, Southern District of New York, issued two search warrants for the following premises: (1) the Red Ball Interior Demolition Transfer Station, located at 625–635 West 29th Street, New York, New York; and (2) the Red Ball Interior Demolition Offices, located at 575 Washington Street, New York, New York.

(hereinafter collectively referred to as "the September 15 warrants.")

Each of the September 15 warrants authorizing a search of a premise containing office space called for seizure of the following:

> business records including but not limited to: permit applications and permits; agreements and contracts regarding land use: lists, correspondence, journals and other records naming clients and customers; documents reflecting ownership of property and vehicles on property; receipts and dump tickets; financial records and documents.

The Government maintains that the description of documents to be seized was carefully tailored to satisfy its legitimate interests in investigating wrongdoing, while minimizing the intrusion on any legitimate aspects of defendants' businesses. Defendants charge that the warrants authorized a general search in violation of the Fourth Amendment's particularity clause.

The documents described were relevant to the Government's investigations of each business' activities. Probable cause for the issuance of each of the September 15 warrants was provided by the Affidavit of FBI Special Agent Paul C. McMahon which described in detail the Government's investigation into defendants' operation of an allegedly illegal landfill. Moreover, the McMahon affidavit established ample probable cause to believe that the Port Ivory Landfill was an unlawful operation.

Defendants argue that the search warrants described above constituted impermissibly general warrants which failed to particularize sufficiently the items to be seized. This court disagrees. In applying the proper legal analysis, the warrants were sufficiently particularized and descriptive.

It is settled law that a general warrant is one which fails to satisfy the Fourth Amendment's requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const.Amend. IV. The Second Circuit in *United States v. Buck*, 813

F.2d 588, 590 (2d Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), stated the standard to be followed with regard to the particularization of a search warrant:

> The purpose of the particularity requirement, the Supreme Court has held, "is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] ... (1971). Moreover, the Court has stated, in an oft-quoted passage, that the particularity requirement "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192, 196 [48 S.Ct. 74, 76, 72 L.Ed. 231] ... (1927). This Court, however, has recognized that these familiar words from *Marron* "ha[ve] not always been applied literally ... Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to uncover, and have insured that all those facts were included in the warrant." *United States v. Young*, 745 F.2d 733, 759 (2d Cir.1984), *cert. denied*, 470 U.S. 1084 [105 S.Ct. 1842, 85 L.Ed.2d 142] ... (1985).

813 F.2d at 590.

The warrants at issue in the instant case were very detailed. Numerous, clearly delineated items were authorized for seizure at the Port Ivory Landfill, and at the various transfer stations and offices. A warrant authorizing the seizure of a large quantity of accurately described business records at a given location does not pose the danger of giving unbridled discretion to seize to the executing agents; it thus con-stitutes a valid warrant, so long as it is supported by probable cause. *See National City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir.) (citing *United States v. Brien*, 617 F.2d 299, 309 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980)); *United States v. McClintock*, 748 F.2d 1278, 1282–83 (9th Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985); *United States v. Offices Known As 50 State Distributing Co.*, 708 F.2d 1371, 1372–75 (9th Cir.1983), *cert. denied*, 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984). Defendants do not claim that there was insufficient probable cause to sustain issuance of the warrants, just that the warrants were not sufficiently particularized, and therefore overbroad.

Courts have consistently held that where a business is totally illegal, a search warrant may properly authorize the seizure of *all* documents of the business. In *National City Trading Corp. v. United States*, 635 F.2d 1020 (2d Cir.1980), the Second Circuit held that "there was probable cause to believe that [the business searched] was permeated with fraud. Accordingly, the agents could properly seize all of the business records ... described in the warrant." *Id.* at 1026.

The First Circuit, in *Brien*, held:

> Where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are, as here, accurately described so that the executing officers have no need to exercise their own judgement as to what should be seized.

*Brien*, 617 F.2d at 309. Relying on both *National City* and *Brien*, the Ninth Circuit held in *50 State Distributing* that a warrant authorizing the seizure of a broad category of documents was not a general warrant:

> In this case the government argues that the search warrant met the particularity requirement. It argues ... that the warrant removed discretion from the executing officers in that the warrant essentially authorized seizure of all the busi-

ness-related books, records, equipment and merchandise on Appellee's premises ... We agree. The warrant left the executing officers with no discretion. *United States v. Offices Known as 50 State Distributing Co., supra,* 708 F.2d at 1374. Defendants argue on the basis of what they characterize as a defect in this search warrant, yet, the very defect they say exists here did not invalidate the less particularized warrant in *50 State Distributing.*

Where a search warrant application establishes probable cause for the existence of a scheme involving widespread wrongdoing, as did the search warrant applications at issue here, courts are entitled to authorize searches for and seizures of correspondingly broad categories of documents. *Andresen v. Maryland,* 427 U.S. 463, 481 n. 10, 96 S.Ct. 2737, 2748 n. 10, 49 L.Ed.2d 627 (1976). The breadth of the description of documents to be seized depends on the probable cause which exists for issuance of the warrant.

The warrants at issue here were as particularized as possible, given the nature of the illegal schemes involved and the exhaustive and widespread description of probable cause, as set forth in the McMahon Affidavit. *Id.* To the extent that any items outside the scope of these valid warrants were seized, the proper remedy would be suppression and return of *those* items, not suppression of *all* items seized under the warrant. *United States v. Matias,* 836 F.2d 744, 747 (2d Cir.1988); *United States v. Dunloy,* 584 F.2d 6, 11 n. 4 (2d Cir.1978).

8. Motion To Suppress McDonald's Statements Is Denied

Defendant McDonald, pursuant to Fed.R.Crim.P. 12(b)(3), has moved to suppress statements he made to FBI agents on the grounds that he was not advised of his *Miranda* rights prior to being interviewed. This court deems his motion frivolous. Two FBI agents, who identified themselves and explained the nature and purpose of the interview, spoke with McDonald at his home. *Miranda* rights attach only when a suspect is in custody. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). McDonald, who was interviewed voluntarily in his own home, was not in custody. The fact that a criminal investigation has been commenced does not require *Miranda* warnings in an otherwise non-custodial setting. *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (taxpayer's home). McDonald relies heavily on *United States v. Jacobs,* 547 F.2d 772 (2d Cir.1976) *cert. dismissed,* 436 U.S. 31, 98 S.Ct. 1873, 56 L.Ed.2d 53 (1978); however, his reliance is misplaced. *Jacobs* stands for the proposition that grand jury witnesses must be advised of their Fifth Amendment rights and their status as "targets" prior to being questioned in the grand jury. McDonald was neither a witness appearing before a grand jury nor had he been served with a grand jury subpoena. Thus, McDonald's motion is denied.