**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Thomas TUOHEY,
Defendant–Appellant.**

**No. 88–1245.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1989.

Decided Feb. 1, 1989.

---

Richard A. Hamar, Hamar and Hamar, Miami, Fla., for defendant-appellant.

Leland B. Altschuler, Asst. U.S. Atty., San Jose, Cal., for plaintiff-appellee.

Before BROWNING, BEEZER and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

John Thomas Tuohey appeals his conviction following a guilty plea to the criminal conspiracy count of a multicount indictment for bank fraud. Tuohey argues that the conspiracy charge did not constitute a crime or, in the alternative, that it constituted a misdemeanor rather than a felony. We affirm.

I

Tuohey conspired with other individuals to gain control of the Bank of Northern California without reporting the transaction to the Federal Deposit Insurance Corporation ("FDIC"). Although the conspirators planned to hold 51 percent of the shares as a group, they purchased the stock as individuals, each conspirator purchasing fewer than ten percent of the shares. They thus evaded the reporting requirements applicable to changes in control of federally insured banks. 12 U.S.C.A. § 1817(j) (West Supp.1988). Willful violation of the requirements is punishable by a civil fine only. *Id.* at § 1817(j)(16).

Tuohey and other conspirators were indicted on various charges, among which was count I, conspiracy "to defraud the United States ... by interfering with and obstructing the FDIC's lawful government function of administering the provisions of the Change in Bank Control Act of 1978 to prevent serious adverse effects on the banking system." Tuohey and the govern-

ment entered into a plea agreement by which Tuohey pled guilty to count I, conspiracy to defraud the United States. 18 U.S.C. § 371 (1982).

On June 10, 1988, the district court accepted the plea agreement and sentenced Tuohey to five years probation, 500 hours of community service, and a fine of $100,-000. Tuohey timely appealed the judgment of conviction and sentence. Fed.R.App.P. 4(b). We have jurisdiction over this final judgment. 28 U.S.C. § 1291.

■ We review the sufficiency of an indictment de novo, as a matter of law. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). We view the evidence for and against an indictment, as for a conviction, in the light most favorable to the government, however, to determine whether it was sufficient to allow a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Buckley*, 689 F.2d at 897. A guilty plea must have a basis in fact. Fed.R.Crim.P. 11(f).

## II

■ Tuohey argues that a conspiracy to violate a noncriminal statute is not a crime. He misstates the exact nature of the charge to which he pled, however, by claiming that he pled guilty to conspiring to violate 12 U.S.C. § 1817(j). In fact, he pled guilty to a far broader crime, conspiracy to defraud the United States. "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined ... or imprisoned ... or both." 18 U.S.C. § 371.

The indictment did not allege a conspiracy to commit an offense against the United States, although it could have, since a civil violation of law may be an "offense" for purposes of this statute. *United States v. Hutto*, 256 U.S. 524, 529, 41 S.Ct.

541, 543, 65 L.Ed. 1073 (1921); *Hunsaker v. United States*, 279 F.2d 111, 112 (9th Cir.1960). Instead, the indictment relied on the second part of the statute, defrauding the United States. In *Dennis v. United States*, the Supreme Court reaffirmed earlier holdings that conspiracy to defraud the United States is not limited to common-law fraud, but reaches "any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of Government." 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966) (quoting two earlier cases). Tuohey's indictment tracked the language of *Dennis*.

The Supreme Court recently limited the scope of "defraud" to its normal meaning of a deprivation of property in the context of the mail fraud statute, 18 U.S.C. § 1341 (1982). *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2880–81, 97 L.Ed.2d 292 (1987). The Court distinguished section 371 in a dictum footnote, however, retaining the broad conspiracy definition of fraud on the grounds that section 1341 was designed to protect the property rights of individuals, while section 371 "is a statute aimed at protecting the Federal Government alone." *Id.* at 2881 n. 8; *see also United States v. Rosengarten*, 857 F.2d 76, 78–79 (2d Cir.1988) (post-*McNally* application of section 371's broad definition of "defraud"), *cert. denied*, ___ U.S. ___, 109 S.Ct. 799, 102 L.Ed.2d 790 (1988). In a case decided two days before *McNally*, the Court had declined to reconsider the scope of section 371. *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 2751–52, 97 L.Ed.2d 90 (1987).

Despite *Tanner*, and despite the Court's dictum regarding section 371 in *McNally*, the *McNally* decision appears to leave the broad construction of "defraud" in section 371 in some doubt. In *McNally*, the Court overruled virtually unanimous case law that had broadly defined "defraud" in the mail fraud context to extend to non-property "good government" frauds. The similarities between section 371 and section 1341 are striking. Both date from the same period in our history; section 371 from 1867, and section 1341 from 1872.

Both have long been read to extend to non-property frauds. Both have been criticized as broad, vague bases for criminal liability. *See, e.g.,* Goldstein, *Conspiracy to Defraud the United States,* 68 Yale L.J. 405 (1959) (A thorough and still relevant discussion of section 371 that recommends that the "defraud the United States" part of the section be held unconstitutional, and criticizes it as a "Kafkaesque" basis for criminal liability. *Id.* at 463). Despite these similarities, the key word "defraud" now has a fundamentally different meaning in a conspiracy case than it does in a mail fraud prosecution.

In *McNally,* the Court discussed the common meaning of "defraud" as extending only to property, and repeated the general rule that we must choose the harsher reading of a criminal statute only "when Congress has spoken in clear and definite language." *McNally,* 107 S.Ct. at 2881. The language of section 371 does not clearly and definitely extend the conspiracy statute to non-property frauds.[1] The Court, however, traced case law beginning with a decision of the First Circuit in 1904 to establish the broad scope of section 371.[2] *Id.* at 2881 n. 8 (quoting *Curley v. United States,* 130 F. 1 (1st Cir.1904)). Section 371 was not before the Court in *McNally,* of course. It is perhaps for this reason that the *McNally* Court drew a rather conclusory distinction between section 371 and section 1341. *Dennis* requires us to recognize the continued broad application of section 371 to a case such as this that did not involve a conspiracy to take any money or property from the United States, or to engage in any conduct recognized as criminal by any other statute. *Cf. United States v. Faust,* 850 F.2d 575, 581 (9th Cir.1988) (declining invitation to limit scope of defrauding the United States in context of forgery statute, 18 U.S.C. § 495 (1982), in light of *McNally;* noting Supreme Court's distinguishing of 18 U.S.C. § 371 in *McNally* ).

We have held section 371 to be constitutional, commenting that it has been so held repeatedly, and that it has been widely used since 1867. *United States v. Heck,* 499 F.2d 778, 788 (9th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 677, 42 L.Ed.2d 680 (1974). Three elements establish a conspiracy under section 371: An agreement to achieve an unlawful objective, an overt act in furtherance of the illegal purpose, and the requisite intent to defraud the United States. *United States v. Everett,* 692 F.2d 596, 601 (9th Cir.1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *see also United States v. Andreen,* 628 F.2d 1236, 1248 (9th Cir.1980) (identical elements but divided into four rather than three).

■ Under *Dennis,* the "illegal" purpose need not involve a criminal violation. Thus, the "defraud" part of section 371 criminalizes *any* willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute. The overt act need not be criminal itself. *Andreen,* 628 F.2d at 1248. The government need not suffer pecuniary loss by the fraud. *United States v. Lane,* 765 F.2d 1376, 1379 (9th Cir.1985). A justification for criminalizing such conduct is the separate substantive evil of conspiracy, in which conspirators reinforce each other's evil intent. *Andreen,* 628 F.2d at 1249.

Recognizing the broad scope of section 371, we review indictments under it carefully, and construe it narrowly. *See Dennis,* 384 U.S. at 860, 86 S.Ct. at 1843. We have rejected indictments that did not involve a violation of a duty to the government. Tuohey relies on these cases, but they must be distinguished. In *United States v. Varbel,* 780 F.2d 758 (9th Cir. 1986), we reversed the convictions of defendants based on the Currency Transactions Reporting Act, 31 U.S.C. § 5313 (1982), because the Act did not require

---

1. "Defraud" is modified in section 371 by "in any manner or for any purpose." This modification obviously extends "defraud" to its limits, but those limits cannot extend beyond the reasonable meaning of the word modified.

2. In *Tanner,* the Court noted the absence of useful legislative history regarding the predecessors to section 371. *Tanner,* 107 S.Ct. at 2751.

them to report the aggregate amount of individual currency transactions that each involved less than $10,000.

In *United States v. Murphy*, 809 F.2d 1427, 1432 (9th Cir.1987), we held a section 371 indictment invalid because it depended solely on allegedly false currency reports that in fact were correct. Dicta in *Murphy* can be construed to require that a conspiracy charge under section 371 be based upon conduct that has "been proscribed by criminal statute." *Id.* Any such construction is incorrect in light of *Dennis.* We read *Murphy* and *Varbel* only to mean that a section 371 conviction may not be based upon a failure to volunteer information that is not required to be provided to the government, or upon the furnishing of correct information; such acts do not sufficiently impair the functioning of the government to support a criminal conviction.

The government correctly distinguishes this case. Here, the defendants willfully conspired to avoid a reporting requirement imposed by statute. Their evasion of their duty certainly impaired the proper regulatory function of the FDIC. A reasonable trier of fact could conclude that this conduct constituted a fraud upon the government. The fact that the violation of banking law was only a civil offense is not relevant. The error Tuohey makes is to assume that a section 371 conviction requires a conspiracy to commit another crime. Rather, the statute is self-contained; the conspiracy *is* the crime, as long as the conspirators' actions violated a duty reasonably owed to the government.

### III

Tuohey's statement that the government stipulated that his conduct did not involve fraud or moral turpitude is incorrect. That is merely Tuohey's interpretation of the stipulated facts. Tuohey stipulated to his willful conspiracy to avoid reporting a transaction. This conduct may reasonably

be given the label of fraud or moral turpitude, and, in any case, (common-law) fraud or moral turpitude are not elements of a section 371 charge, in light of the broad *Dennis* definition of defrauding the United States.

■ The statute states: "If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor." 18 U.S.C. § 371. A crime punishable by a fine only was a misdemeanor as of the date of the offense. 18 U.S.C. § 1 (1982) (repealed).[3] Tuohey thus argues that since he could only have been fined for a violation of 12 U.S.C. § 1817(j)(16), his crime was a misdemeanor, assuming it was a crime at all. This argument is meritless. The misdemeanor exception applies only to the "offense against the United States" part of section 371, not to the second part under which Tuohey was convicted, defrauding the United States. *United States v. Segal*, 852 F.2d 1152, 1157 (9th Cir.1988).

### CONCLUSION

Tuohey was properly convicted of the felony of defrauding the United States. We affirm the judgment of the district court.

**AFFIRMED.**

---

[3]. The former classification scheme does not apply to offenses committed after November 1, 1987. The new classification scheme classifies an offense not punishable by imprisonment as an "infraction." 18 U.S.C. § 3559(a)(1)(I)(Supp. IV 1987). Because Tuohey's offense occurred in 1985, we use the former classification scheme.