UNITED STATES of America,
Plaintiff–Appellee,

v.

Yasuhiro KATO, Defendant–Appellant.

No. 88–1160.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Decided June 20, 1989.

Brook Hart, Hart & Wolff, Honolulu, Hawaii, for defendant-appellant.

Mark J. Bennett, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before NORRIS, NOONAN and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

Kato appeals his convictions for conspiracy against the United States, 18 U.S.C. § 371 (1982), mail fraud, 18 U.S.C. § 1341 (1982), and false statement, 18 U.S.C. § 1001 (1982 & Supp. IV 1986). Kato contends that his conviction for mail fraud, based on allegations that he defrauded the Federal Aviation Administration into issu-

ing pilot licenses to those unqualified to receive them, is invalid under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), because the pilot licenses are not property. He also contends that his conspiracy conviction must be reversed because it might have been based on the insufficient ground of an agreement to commit mail fraud by defrauding the FAA into issuing pilot licenses. Finally, Kato contends that his false statement conviction was based on an instruction improper under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), and must be reversed. We reverse the mail fraud conviction, affirm the conspiracy and false statement convictions, and remand for resentencing.

## FACTS

In January 1987, Kato, Charles Rogers, and Coral Hansen were indicted for conspiring to defraud the United States and the FAA, to violate the federal mail fraud statute, and to violate the federal statute against making false statements (Count 1). The indictment also charged the defendants with the substantive offenses of mail fraud (Counts 2–10), and false statements (Counts 11–19).

The following is a summary of the allegations in the indictment. Kato ran the American Flying Academy (AFA), a flight training school in Hawaii. His objective was to bring Japanese citizens to Hawaii to obtain FAA private pilot licenses. Kato recruited Rogers, who was authorized by the FAA to administer FAA written tests taken in his presence, under strict examination conditions, in California. Rogers furnished test papers and answer sheets to Kato in Hawaii. Kato and his agents allowed some applicants to take the test, then reviewed their answers and changed them when necessary. Other students had the answer sheets partially filled out by Kato or his agents; still others simply signed their names and never saw the test papers again. Kato gave the papers to Rogers, who forwarded them to the FAA, where they were graded. Rogers, who was also authorized by the FAA to give

flight tests, certified that AFA students passed oral and flight tests given in California, when in fact they had not passed or had not even taken the tests.

Kato recruited Hansen, who was authorized by the FAA to give oral and flight tests. She gave such tests without having the required evidence that the examinee had passed the written test. Hansen also passed a number of students who were unable to read, speak, or understand English, despite her responsibility under FAA regulations to determine that the examinee had facility in English. Hansen passed some students without conducting the required oral and flight tests, and she falsified the dates of flight tests on some certification applications. When Hansen certified that students had passed all examinations, Kato, Hansen, or their agents took the completed certificate applications and the written test scores to the FAA in Honolulu, who then mailed them to FAA headquarters in Oklahoma. Subsequently, the FAA issued unrestricted private pilot licenses to the students.

Before trial, Rogers and Kato moved to dismiss counts one through ten for failure to charge a crime under *McNally*, 107 S.Ct. 2875, which holds that the mail fraud statute applies only when a victim has been defrauded of money or property. The trial court denied the motion. Codefendants Rogers and Hansen pleaded guilty to conspiracy.

At trial Kato again raised the *McNally* issue by means of a motion for acquittal after the government had presented its case. The motion was denied. The jury found Kato guilty of all counts charged.

### I. Mail Fraud Under *McNally*

Title 18 U.S.C. § 1341 prohibits use of the mails to fraudulently obtain money or property. In *McNally*, 107 S.Ct. 2875, the Supreme Court rejected the application of the mail fraud statute to "schemes to defraud citizens of their intangible rights to honest and impartial government," *id.* at 2879, and held that "the statute is limited in scope to the protection of property rights." *Id.* Accordingly, the Court held

that "any benefit which the Government derives from the statute must be limited to the Government's interests as a property-holder." *Id.* at 2881 n. 8. Following *McNally*, the Supreme Court held in *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987), that section 1341 encompasses intangible property rights, specifically, the Wall Street Journal's right to keep confidential and have exclusive prepublication use of the schedule and contents of its "Heard on the Street" columns.

Kato's indictment, filed before *McNally* was decided, alleged neither denial of the "right to good government" nor that Kato "obtained property" from the FAA. The indictment charged Kato with violating the mail fraud statute by devising a scheme to defraud the United States "into issuing private pilots certificates to those unqualified and/or ineligible to receive them." The jury instructions, after *McNally* was decided, stated that conviction on the mail fraud count requires a finding that "the defendant made up a plan or scheme to obtain FAA private pilot certificates by means of false promises or statements[.]" The government argues that the indictment, instructions, and post-*McNally* law support its position that obtaining the certificates constituted mail fraud because the issued and completed certificates are property within the meaning of *McNally*. We disagree.

■ Under *McNally*, "any benefit which the Government derives from the [mail fraud] statute must be limited to the Government's interests as a property-holder." *Id.* at 2881 n. 8. Here, the government was defrauded into issuing certificates. But for Kato's scheme, the government would retain in its possession a greater number of blank sheets of paper in the form of unissued certificates. We do not understand the government to be arguing that the property right of which it was defrauded was the right to possession of those blank sheets of paper. Accordingly, the only property interest to be evaluated under *McNally* is the right conveyed by the issued certificates as licenses.

■ In *United States v. Dadanian*, 856 F.2d 1391 (9th Cir.1988), we considered the issue of whether a license constitutes property under *McNally* and concluded that a fraudulent scheme to obtain a license "did not affect [a] city's interests as a property holder." *Id.* at 1392. The Sixth Circuit, considering the same issue in *United States v. Murphy*, 836 F.2d 248 (6th Cir.), *cert. denied*, ─── U.S. ───, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988), stated that a fraudulent scheme to obtain a license did not deprive the government of a property right because licenses, while "property" of the recipient once issued, are not property of the government either before or after they are issued. *Id.* at 253–54. The Sixth Circuit held that the government's right to accurate information with respect to its issuance of licenses constitutes an intangible right not encompassed in the mail fraud statute. *Id.* at 254. Based on *Dadanian* and *Murphy*, we hold that Kato's scheme did not affect the government's interests as a property holder. The conviction must be reversed because the indictment and jury instructions permitted conviction for conduct that does not constitute a violation of 18 U.S.C. § 1341 as defined by *McNally*.

## II. Conspiracy

Kato was convicted under 18 U.S.C. § 371 of conspiracy to defraud the government, to commit mail fraud (18 U.S.C. § 1341), or to make false statements (18 U.S.C. § 1001). As the conspiracy verdict was a general one, it is not known on which of the three alternate grounds the jury relied. Kato contends his conviction must be reversed because the jury might have relied on the mail fraud objective, which is legally insufficient under *McNally*.

■ "A conspiracy conviction must be reversed if the trial court instructs the jury that it need find only one of the multiple objects alleged in order to convict of conspiracy in a case in which the reviewing court holds any one of the supporting counts legally insufficient." *United States v. Lopez*, 803 F.2d 969, 975 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987). An exception to this

rule occurs when a verdict based on any ground would mean that the jury found every element necessary to support a conviction on a sufficient ground. *United States v. Ochs*, 842 F.2d 515, 520 (1st Cir. 1988), *citing United States v. Jacobs*, 475 F.2d 270, 283–84 (2nd Cir.), *cert. denied*, 414 U.S. 821, 94 S.Ct. 116, 38 L.Ed.2d 53 (1973).

■ Here, the jury was instructed that they could convict Kato of conspiracy if they found that there was an agreement to defraud the United States and the FAA into issuing private pilot certificates to unqualified and/or ineligible persons. This was based on the "conspiracy to defraud the United States, or any agency thereof" language of 18 U.S.C. § 371. This charge was legally sufficient. Conspiracy to defraud the United States under 18 U.S.C. § 371 does not require an agreement to defraud the government of money or property. The "defraud" part of section 371 prohibits *any* willful impairment of a legitimate function of government, whether or not the improper acts or objective are criminal under another statute. *United States v. Tuohey*, 867 F.2d 534, 537 (9th Cir.1989), *citing Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). The mail fraud charge, while not legally sufficient, was alleged in language virtually identical to the conspiracy to defraud charge. Thus, even if the jury convicted under the mail fraud charge, the conviction is valid because the mail fraud charge contains every element of the legally sufficient charge of defrauding the United States. *Jacobs*, 475 F.2d at 283–84.

Kato also argues that the court committed reversible error by failing in the conspiracy instructions to define "defraud the United States and the FAA." That argument, which was not made in the district court, lacks merit. The jury was instructed that they had to find that there was a specific agreement to get the United States and the FAA to issue pilot certificates to those unqualified under FAA regulations to receive them. The jury was also instructed that mere agreement to perform an act that constituted a violation of an FAA regulation was not a criminal act. The instructions informed the jury that it had to find agreement to knowingly and intentionally violate a regulation. No further definition was needed. *See Walker v. United States*, 342 F.2d 22, 24 (5th Cir.), *cert. denied*, 382 U.S. 859, 86 S.Ct. 117, 15 L.Ed.2d 97 (1965) (the phrase "with intent to defraud the United States" held to be plain and comprehensible to laymen such that it was proper for trial court to simply read the statute rather than give specific instructions).

### III. False Statement

■ Kato challenges his conviction for false statement in violation of 18 U.S.C. § 1001 based on the *Pinkerton* instruction given. The court instructed the jury that if it found Kato guilty of conspiracy and if it found that while he was a member of the conspiracy, his fellow conspirators committed mail fraud or false statement in furtherance of or as a natural consequence of the conspiracy, "then you *should* find the defendant guilty of that particular count or those particular counts." (Emphasis added.) Kato does not contend that the *Pinkerton* charge was erroneous per se, but argues that the court erred by using the word "should" instead of "may," thus making the imposition of liability mandatory rather than discretionary. Kato did not except on this ground to the instruction when given.

*Pinkerton* instructions are frequently given with discretionary phrasing. *See, e.g., United States v. Vasquez*, 858 F.2d 1387, 1393 n. 3 (9th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989). However, we have held that when the elements of vicarious coconspirator liability as defined by *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), are present, a defendant is guilty. *See, e.g., United States v. Crespo de Llano*, 838 F.2d 1006, 1020 (9th Cir.1987); *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.), *as amended by*, 798 F.2d 1250 (1986) ("a coconspirator is responsible"); *United States v. Ferris*, 719 F.2d 1405, 1408 (9th Cir.1983) ("defendant is liable for the acts of his coconspirators").

Accordingly, we hold that the mandatory *Pinkerton* charge in Kato's case was not erroneous.

As support for our position we note that the Fifth and Seventh Circuits have approved what amount to mandatory *Pinkerton* charges. In *United States v. Zabic,* 745 F.2d 464 (7th Cir.1984), the court upheld a conviction when the trial judge had given a discretionary *Pinkerton* charge followed by a further charge that under those conditions the acts of the coconspirator who personally committed the substantive crime "are the acts of the defendant." *Id.* at 474–75. *See also United States v. Neapolitan,* 791 F.2d 489, 505 (7th Cir.) (discretionary *Pinkerton* charge accompanied by instruction on personal nature of defendant's guilt for substantive crime committed by codefendant) *cert. denied,* 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). In *United States v. Basey,* 816 F.2d 980, 999 n. 36 (5th Cir.1987), the court quoted a Seventh Circuit model jury instruction that a defendant "should" be found guilty of a substantive count when the *Pinkerton* elements are established.

In support of his position Kato cites *United States v. Blackmon,* 839 F.2d 900, 909–910 (2nd Cir.1988), in which the Second Circuit reversed when the trial court, having used discretionary language during the jury instructions, switched to a mandatory theory in response to jury inquiry during deliberations. *Blackmon,* however, does not hold that a mandatory *Pinkerton* charge given in the normal course of a trial would be invalid. Rather, the court notes the "lack of clarity" of the distinction previous courts had drawn between mandatory and discretionary *Pinkerton* charges. *Id.* at 910 n. 12. We affirm Kato's conviction for false statement.

## CONCLUSION

Kato's conviction for mail fraud must be reversed under *McNally.* Kato's convictions for conspiracy and false statement are affirmed. This case is remanded to the district court for resentencing in light of the reversal of the mail fraud conviction.

AFFIRMED in part, REVERSED in part, and REMANDED.

NOONAN, Circuit Judge, concurring and dissenting:

I concur in the opinion of the court as to the conspiracy and false statement counts, and I dissent as to the mail fraud counts.

A narrow, even technical, issue is presented by this appeal, but when a technicality is used to defeat justice it seems appropriate for a court to construe the law technically to achieve justice.

The question is whether the paper of which Kato defrauded the government constitutes property. I see no reason why it does not. If the paper belonged to a private person, it would indisputably be property. Why should the government be less protected from fraud than a private individual?

The case of a private individual is clear if one thinks of a hypothetical in which A by trick takes from B the deed to Blackacre. Anciently, the law did not recognize the paper deed as protected property. Modernly, "all jurisdictions" recognize that written instruments, such as deeds, can be stolen. LaFave & Scott *Criminal Law* § 8.4.

It is equally well-established law that blank bonds are securities for the purposes of 18 U.S.C. § 2314 forbidding the transport in interstate commerce of stolen securities. *U.S. v. Taylor,* 802 F.2d 1108, 1115 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). The fact that these blank instruments have more value when filled in does not deprive the paper of its character of being a thing that can be used for fraud. If blank paper can be stolen and transported, is it not property?

The majority in this case seem to think that we are bound by *United States v. Dadanian,* 856 F.2d 1391 (9th Cir.1988). But the issue as to whether the paper on which the license was issued in that case was property was not decided by that court.

The Supreme Court decided *McNally* on June 24, 1987. Congress in effect over-

ruled the court on November 18, 1988 by enacting Pub.L. 100–690, Title VII § 7603(a), 18 U.S.C. § 1346. There is thus no reason to stretch *McNally* as though it were a landmark decision indicating the proper direction of the law. The Supreme Court itself substantially limited *McNally* by holding that intangible rights constituted property for mail fraud purposes. *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). It is strange to have this court strain to expand the reasoning of *McNally* in order to acquit the operator of a squalid scheme making money from a practice dangerous to the public safety by a method which involved depriving the United States of tangible property that the government would not have surrendered without being tricked by the fraud of the defendant.