UNITED STATES of America, Plaintiff,

v.

W.R. GRACE, Alan R. Stringer, Henry A. Eschenbach, Jack W. Wolter, William J. McCaig, Robert J. Bettacchi, O. Mario Favorito, Robert C. Walsh, Defendants.

### No. CR 05–07–M–DWM.

United States District Court, D. Montana, Missoula Division.

Aug. 24, 2006.

---

Kris A. McLean, Office of the U.S. Attorney, Missoula, MT, William W. Mercer, Office of the U.S. Attorney, Billings, MT, Thomas L. Sansonetti, David M. Uhlmann, U.S. Department of Justice, Washington, DC, for Plaintiff.

Angelo J. Calfo, Harold Malkin, Michelle K. Peterson, Yarmuth Wilsdon Calfo, Seattle, WA, Michael F. Bailey, Bailey & Antenor, William Adam Duerk, Michael J. Milodragovich, Milodragovich Dale Steinbrenner & Binney, Missoula, MT, David S. Krakoff, Gary A. Winters, Mark Holscher, Mayer Brown Rowe Maw LLP, Washington, DC, Ronald F. Waterman, Gough Shanahan Johnson & Waterman, Palmer

A. Hoovestal, Hoovestal Law Firm, Helena, MT, Jeremy Maltby, O'Melveny & Myers, Los Angeles, CA, Elizabeth Van Doren Gray, Sowell Gray Stepp & Lafitte, Columbia, SC, William A. Coates, Roe Cassidy Coates & Price, Greenville, SC, Stephen R. Spivack, Bradley Arant Rose & White, Washington, D.C., David E. Roth, Bradley Arant Rose & White LLP, Birmingham, AL, for Defendants.

## ORDER

MOLLOY, Chief Judge.

### I. Introduction

Several motions pending before the Court raise issues relating to the applicability of the Toxic Substances Control Act (TSCA) to this case and the admissibility of opinion testimony on TSCA compliance and other regulatory matters. The first is the Defendants' motion to exclude evidence of health effects studies and product tests allegedly conducted or commissioned by Defendant Grace in the 1970's and 1980's. The Defendants argue that such studies and tests are irrelevant to the charges in this case because, as a matter of law, the Defendants were under no legal obligation to inform the Environmental Protection Agency (EPA) of the information contained in the studies. The United States has moved to exclude proffered opinion testimony by defense experts relating to the interpretation and application of TSCA and the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA).[1] The Defendants' motion in limine is considered first, followed by the Government's motions to exclude defense experts. The motions are either granted, denied or reserved for trial for the following reasons.

### II. Background

Count I of the Superseding Indictment alleges a conspiracy to defraud the United States in violation of 18 U.S.C. § 371. Superseding Indictment ¶ 71(b). The Superseding Indictment alleges the following as acts in furtherance of the conspiracy:

— Defendant Grace commissioned a "Hamster Study" from 1976 to 1978 in which hamsters were injected with tremolite fibers and some died of mesothelioma. Grace received a preliminary draft report of the study's findings on May 25, 1978. Superseding Indictment ¶¶ 85–88.

— Defendant Grace hired the consulting firm Enbionics to review chest x-rays of workers in the Libby Mine and compare them to x-rays of workers from a Grace vermiculite mine in Enoree, South Carolina. The resulting report, issued to Defendant Grace on August 25, 1978, observed a much higher rate of asbestos disease among the Libby workers. Superseding Indictment ¶¶ 89–92.

— Defendant Grace hired Dr. Richard Monson to study 66 death certificates of Libby workers and examine the cause of death listed. In a report distributed to Grace senior management on July 28, 1982, Dr. Monson concluded that the workers studied suffered an excessive rate of respiratory cancer including mesothelioma. Superseding Indictment ¶¶ 103–104.

— Defendant Grace conducted many product tests between 1976 and 1987, in which Grace measured fiber releases from uses of its end prod-

---

1. The Government's motion to exclude the testimony of the Defendants' CERCLA expert, Elliot Eder, is unrelated to the other motions discussed here but is included because the Government chose to challenge the testimony of Eder and the Defendants' TSCA expert Blake Biles in the same motion. *See* Doc. No. 463.

ucts containing vermiculite and found that the products when disturbed released asbestos into the air. Superseding Indictment ¶¶ 115–127.

The Superseding Indictment alleges that each of these studies and reports should have been reported under TSCA and that the Defendants' failures to so report constitute acts in furtherance of the defrauding conspiracy. Section 8(e) of the Toxic Substances Control Act (TSCA 8(e)) became effective January 1, 1977 and states the following with regard to reporting of information about hazardous chemicals:

> Any person who manufactures, processes, or distributes in commerce a chemical substance or mixture and who obtains information which reasonably supports the conclusion that such substance or mixture presents a substantial risk of injury to health or the environment shall immediately inform the Administrator of such information unless such person has actual knowledge that the Administrator has been adequately informed of such information.

15 U.S.C. § 2607(e). There are no regulations implementing the statutory command of TSCA 8(e).

The only interpretive guidance available to the Defendants during the years in which they received the studies listed above was a Policy Statement issued by the EPA on March 16, 1978.[2] *See* Statement of Interpretation and Enforcement Policy; Notification of Substantial Risk Under Section 8(e), 43 Fed.Reg. 11110. Under the Policy Statement, the term "substantial risk information" as it is used in TSCA means "information which reasonably supports the conclusion that a chemical substance or mixture presents a

substantial risk of injury to health or the environment." *Id.* at 11111, Subpart I. Whether a risk is "substantial" depends on (1) the seriousness of the harmful effect and (2) the fact or probability of its occurrence. *Id.*, Subpart V.

In addition to the exception embodied in the text of the statute, the Policy Statement lists five circumstances under which covered parties need not report information. Relevant for purposes of this case are exemptions from the reporting requirements if:

> The information "[h]as been published in the scientific literature and referenced by the following abstract services: (1) Agricola, (2) Biological Abstracts, (3) Chemical Abstracts, (4) Dissertation Abstracts, (5) Index Medicus, (6) National Technical Information Service," 43 Fed. Reg. at 11112, Subpart VII(c); or

> The information "[i]s corroborative of well-established adverse effects already documented in the scientific literature and referenced as described in (c) above ...," *Id.*, Subpart VII(d).

The Defendants argue that the Hamster Study, Enbionics Study and Monson Study fall within an exception to the TSCA reporting requirements. They argue that the product testing data did not need to be reported because those tests did not contain information showing that Grace's product presented a substantial risk of injury to health or the environment as required by TSCA 8(e).

### III. Analysis

**A. Defendants' motion to exclude health effects studies and product tests**

The Defendants contend that the Hamster Study, the Enbionics Study, the Mon-

---

**2.** Subsequent interpretive statements from EPA, such as the 1991 TSCA Section 8(e) Reporting Guide issued by EPA's Office of

Toxic Substances, have no bearing on the law as it applied to the Defendants from 1976 to 1987.

son study, and the product testing must be excluded as irrelevant because the Government's proof fails to demonstrate that the Defendants' non-disclosure of those studies violated TSCA 8(e). The Defendants' argument is fatally premature; consideration of whether the Government has proven the alleged TSCA 8(e) violations must wait until the evidence is presented at trial. Moreover, the relief the Defendants seek would require the Court to invade the province of the jury by applying the facts to the law and reaching a legal conclusion as to whether the Defendants complied with TSCA 8(e) reporting requirements.

 The Defendants accurately cite Ninth Circuit case law on conspiracy to defraud. "Three elements establish a conspiracy under section 371: An agreement to achieve an unlawful objective, an overt act in furtherance of the illegal purpose, and the requisite intent to defraud the United States." *United States v. Tuohey,* 867 F.2d 534, 537 (9th Cir.1989). The "illegal" purpose need not involve a criminal violation; any willful impairment of a governmental function is illegal under § 371, even if the improper acts or objective are not criminal under another statute. *Id.* But where a conspiracy charge is based upon failure to volunteer information, there may be no conviction if the information was not required to be provided or if the information was in fact provided as required. *Id.* at 538. "[S]uch acts do not sufficiently impair the functioning of the government to support a criminal conviction." *Id.*

 These principles apply to this case, but not in the manner the Defendants contemplate. As the Court has said many times now, this case will not be tried via motions in limine. The Defendants invite the Court to join them in a lengthy exploration of the reportability of the Hamster Study, the Enbionics Study, the Monson Study, and the many product tests under TSCA 8(e). Now is not the time for that analysis. In essence, the Defendants are asking the Court to grant them summary judgment on the question of their TSCA 8(e) compliance. The procedural mechanism of summary judgment is not available in criminal cases. If the Government's proof at trial does not reasonably support a finding that the Defendants failed to comply with TSCA 8(e), the jury can be instructed that it may not rely on TSCA 8(e) non-compliance as evidence of a conspiracy to defraud, and that the Defendants' acts relating to TSCA 8(e) compliance may not serve as overt acts in support of a conviction. If the Government has offered no other evidence at trial in support of the Count I conspiracy charge, the Defendants may make a motion for judgment of acquittal under Fed. R.Crim.P. 29. But if the Government's proof at trial is sufficient to allow a reasonable juror to conclude that the Defendants failed to comply with TSCA 8(e)'s reporting requirements, it will be left to the jury as the trier of fact to decide first whether the Defendants ran afoul of TSCA 8(e) and second whether the Defendants' TSCA 8(e) compliance, along with the rest of the evidence, proves a conspiracy to defraud the United States. Evidence of the health effects studies and product tests has a tendency to make the existence of facts relating to TSCA 8(e) compliance more or less probable and is therefore admissible under Fed.R.Evid. 401 and 402. The Defendants' motion in limine is denied.

**B. The Government's motions to exclude defense experts**

**1. Motion to exclude the testimony of Blake Biles**

The Government moves to exclude the proffered opinion testimony of defense ex-

pert Blake Biles as inadmissible under Fed.R.Evid. 402, 403, 702 and 704. Biles was an attorney working in the Environmental Protection Agency's (EPA) Office of Enforcement when Congress enacted TSCA in 1976 and participated in the creation of EPA's first guidance document relating to TSCA's reporting requirements. Since 1980, Biles has worked in private practice advising companies on compliance with environmental requirements. He is prepared to offer his opinion that Grace did not violate TSCA 8(e) when it failed to inform the EPA of a series of studies, memos and reports received by Grace relating to the dangers of asbestos. The Defendants intend for Biles' testimony to show that absence of a conspiracy to defraud: if Grace's decision to withhold information from the EPA was not in violation of the agency's reporting requirements, it can be argued that such conduct is not evidence of a conspiracy motivated by intent to defraud the government. The Government objects to the proffered testimony on the grounds that the testimony purports to instruct the jury on the law applicable to the case and apply the facts to the law, the testimony will not be helpful to the jury, and the testimony's probative value is substantially outweighed by the risk that it will confuse the issues and mislead the jury. The Defendants contend the testimony is admissible because it does not bear on the ultimate issue to be decided by the jury and because it merely rebuts the proffered testimony of a Government witness on the same matters.

Under the "Opinions" heading of his expert disclosure Biles states:

I have reached the following three conclusions based upon (1) my review of the particular memos/reports that the government states W.R. Grace was required to submit to EPA but did not, (2) my consideration of the facts that are relevant to determining whether W.R. Grace was required to submit those memos/reports to EPA, and (3) my application of the TSCA Section 8(e) reporting requirements to those memos/reports and relevant facts.

*First,* W.R. Grace was not required to submit information in the 1978 Hamster Study to EPA if the company knew that the Agency already had been adequately informed of such information. I understand that representatives of EPA both planned and participated in a December 1977 technical conference where Dr. Smith presented a scientific paper, and that W.R. Grace personnel were aware of this. Dr. Joseph Rodricks has informed me that the health risk information in the 1978 Hamster Study was covered by the information in the paper that Dr. Smith presented at the December 1977 conference. Therefore, the information in Dr. Smith's 1978 Hamster Study would not have been reportable to EPA under Section 8(e).

*Second,* W.R. Grace was not required to submit the information in the 1978 Enbionics Report and the 1982 Monson Report if such information corroborated well-established adverse effects that already were documented in referenced scientific literature. Dr. Rodricks has informed me that the information in those reports corroborated such adverse effects. Therefore, the information in those reports would not have been reportable under Section 8(e).

*Third,* based upon the plain language of TSCA 8(e), plus EPA's interpretive guidance for determining whether companies must submit different types of information to the Agency, it was reasonable that W.R. Grace did not submit to EPA other memos and reports identified by the government.

### a. Does Biles' testimony offer a legal conclusion?

The Government argues that defense expert Biles' proffered testimony is inadmissible because it encroaches upon the role of the of the court by instructing the jury as to the meaning of the law and usurps the role of the jury by applying the law to the facts and rendering a conclusion. The Government cites *United States v. Scholl*, 166 F.3d 964 (9th Cir.1999), as support for its contention that such testimony is improper and must be excluded.

The defendant in *Scholl* was convicted of filing false tax returns that did not accurately report his gambling losses. *Id.* at 969. In hopes of negating the element of intent, the defendant testified that he believed he could properly "net out" his gambling wins and losses over the course of a year and report only those gains that exceeded his losses. *Id.* In support of his defense theory that he lacked the requisite intent, the defendant sought to introduce expert witnesses who would testify that (1) the defendant's belief that he could net out gambling losses was reasonable in light of the confusing state of tax and accounting law and (2) that the defendant's record-keeping methods met IRS standards. *Id.* at 972–973.

The trial court refused to allow the defendant's proffered testimony and the Ninth Circuit affirmed. The appeals court held that an opinion as to the confusing state of tax and accounting law and the objective reasonableness of the defendant's understanding of that law would go beyond the proper scope of expert testimony, stating:

> [I]t is well settled that the judge instructs the jury in the law. Experts interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it

is the judge's duty to inform the jury about the law that is relevant to their deliberations.

*Id.* at 973 (quoting *United States v. Brodie*, 858 F.2d 492, 496–497 (9th Cir.1988)), *overruled on other grounds by United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir.1997) (internal quotation marks omitted).

The Defendants argue that the quoted passage from *Scholl* is merely dicta because it is followed by a paragraph that states other grounds for excluding the testimony, including relevance. *Id.* at 973. This effort to marginalize the analysis in *Scholl* goes too far. Although the *Scholl* court also cited relevance as a basis for excluding the proffered testimony, the panel stated without qualification, "[T]estimony concerning the reasonableness of *Scholl's* belief that he could net out wins and losses calls for a legal conclusion. As such, it is inappropriate matter for expert testimony." *Id.*

The *Scholl* court held that testimony as to whether the defendant's record keeping methods complied with IRS standards was properly excluded under Fed.R.Evid. 702 because it would not have assisted the jury. *Id.* The court based its holding on its conclusion that "the jury did not need assistance in applying the legal standard declared by the court—that taxpayers must maintain such records as are sufficient to determine the amount of income and deductions required to be reported on tax returns." *Id.*

The Defendants argue that the holding in *Scholl* is not applicable to Biles' proffered testimony in this case because unlike the proposed experts in *Scholl*, Biles does not intend to testify as to the law under which the Defendants are charged. The relevant charge in this case is conspiracy to defraud the United States in violation of

18 U.S.C. § 371. Superseding Indictment ¶ 71(b). The prosecution alleges that as part of the conspiracy, Defendant Grace and its managers withheld information that should have been reported to the EPA pursuant to TSCA 8(e); but the Defendants are not charged with the crime of violating TSCA 8(e).[3] The Defendants argue that the meaning and application of TSCA is simply a "predicate matter" rather than an "ultimate legal issue" and therefore is a legitimate topic for expert testimony. Defs' Resp. at p. 4. As the Defendants put it, "Here, the Government has not indicted the Defendants for violating TSCA § 8(e) and thus the concerns expressed in *Scholl* about offering ultimate legal opinions and invading the province of the judge and jury are not applicable." Defs' Resp. at p. 5.

The Defendants' argument draws a false distinction. Neither the Federal Rules of Evidence nor the *Scholl* case requires that expert testimony be excluded because it goes to the "ultimate legal issue." To the contrary, Fed.R.Evid. 704(a) provides, "Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." What is objectionable under *Scholl* is the testimony by an expert as to what the law says and how it applies. The error of the Defendants' "predicate matter/ultimate issue" distinction is illustrated by examining the case upon which they most heavily rely, *United States v. Barile*, 286 F.3d 749 (4th Cir.2002).

In *Barile*, the Fourth Circuit reversed a district court's decision excluding a regulatory expert's testimony that the defendant's actions were "reasonable" in light of the applicable regulations. The defendant in *Barile* was a manager at a company that marketed heart monitors. 286 F.3d at 752. Each time the company updated or modified a product, it had to issue a certification that the device was "substantially equivalent" to a device already on the market under § 510(k) of the Food, Drug, and Cosmetic Act. *Id.* If the product was not substantially similar to an existing device, the company would then have to complete a more rigorous approval process. *Id.* at 752–753. The company sought to market a new heart monitor containing an extra feature called an ST segment. *Id.* at 753. The monitor and the segment had been tested and approved separately, but not together. *Id.* Nonetheless, the defendant presented a § 510(k) submission to the Food and Drug Administration (FDA) stating that the new monitor with the ST Segment had been tested when no such completed device existed. *Id.* The defendant was convicted of making a false statement under 18 U.S.C. § 1001. *Id.*

At trial, the defendant sought to introduce the testimony of a regulatory expert who would testify that the misleading statement in the § 510(k) submission were not material. *Id.* at 758. Testimony as to the materiality of the misleading statement was important because the crime under which the defendant was charged requires proof of a "materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2). The district court refused to allow the expert to "testify as to the intent of the law, application of the law, and anything that is within the province of the jury." *Id.* On appeal, the Fourth Circuit explained that while testimony stating a legal conclusion is not generally admissible,[4] testimony as to an ulti-

---

**3.** Under TSCA, failure to make required disclosures may be prosecuted as a criminal misdemeanor. *See* 15 U.S.C. §§ 2614(3), 2615(b).

**4.** The court noted that " 'in some circum-

mate issue of fact is allowed under Rule 704(a). The court held that district courts must "distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion." *Id.* at 760.

In deciding whether opinion testimony states a legal conclusion, the *Barile* court looked to "whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* at 760. If an opinion tracks the language of the statute and uses words that have a specialized legal meaning, the court explained, it is more likely to present a legal conclusion. *Id.* at 760–761. Thus, while the *Barile* court would not allow the defendant's expert to state whether the misleading statements in the § 510(k) submission were "material," due to that term's unique legal significance, the court held that the expert should have been allowed to give his opinion that the defendant's submission was reasonable. *Id.* at 761. Specifically, the appellate court stated that the lower court should have allowed the expert to state his opinion that "combining actual test data for the Passport device along with actual test data for the ST Segment, was unclear but not unreasonable." *Id.*

The *Barile* holding undermines the Defendants' reliance on the predicate matter/ultimate issue distinction because in *Barile* the court allowed testimony going to the ultimate issue. The expert's opinion in *Barile* was phrased in terms of reasonableness, but it is clear that the expert would offer an opinion that the defendant's statement was reasonable *in relation to* the regulations. The expert's opinion that

the statement in the § 510(k) disclosure was not unreasonable could only be taken by the jury as an opinion that the statement was not materially misleading. The opinion allowed in *Barile* is similar the one excluded in *Scholl,* where the proffered expert was not allowed to testify that the defendant's belief was reasonable in light of the in light of the tax laws.

The Defendants rely upon *Barile* despite the fact that it confirms the inapplicability of the predicate matter/ultimate issue distinction because it is an instance in which a court allowed opinion testimony on the meaning and application of the law. It appears, however, that the Fourth Circuit reached its conclusion in *Barile* by applying a test that has not been adopted in this circuit. Neither *Scholl* nor any other Ninth Circuit opinion cited by the parties assesses the admissibility of opinion testimony by considering whether the witness intends to use terms that have a specialized legal meaning. Moreover, such a test would not be useful in this case because TSCA 8(e) contains no terms that have a specialized legal meaning different from that present in the vernacular.[5] In fact, it appears to be a shortcoming in the Fourth Circuit's test that it leaves no basis for excluding testimony stating pure legal conclusions based on statutes that contain no specialized legal terms. Regardless, Ninth Circuit case law is controlling in deciding the issue.

Although the *Scholl* case teaches that opinion testimony consisting of legal conclusions is not admissible, the Court still retains the discretion that accompanies all evidentiary rulings. This discretion was

---

stances, opinion testimony that arguable states a legal conclusion is helpful to the jury, and thus, admissible.' " 286 F.3d at 760 n. 7 (quoting Weinstein's Federal Evidence § 704.04[2][a] (2d ed.2001)).

5. Contrary to the Defendants' argument, the phrase "substantial risk of injury to health or the environment" is easily understood and applied by the layperson and requires no "expert" explanation.

discussed by the court in *United States v. Unruh*, 855 F.2d 1363 (9th Cir.1988). In *Unruh*, the district court admitted expert testimony from a bank examiner in a trial involving charges of misapplication of bank funds and check kiting. *Id.* at 1375. Among other things, the examiner testified about the meaning of a federal regulation: "The testimony about Regulation O, which required board approval for any PCB loan in excess of $25,000 to Forde, *see* 12 C.F.R. § 215(b)(1) (1986), tended to show Forde's motive for funneling loans to himself through other borrowers." *Id.* In deciding that the district court did not abuse its discretion in allowing testimony explaining a federal regulation, the *Unruh* court wrote:

> We have condemned the practice of attempting to introduce law as evidence. The problems of using experts to displace the role of the trial judge are exacerbated here because the case is complex and an expert may receive undue attention from the jury. However, we have reviewed Johnson's testimony carefully. It correctly explains Regulation O. The trial judge's decision to let the testimony in, rather than explaining Regulation O in his instructions to the jury, is justified by the aid that it gave the jury in understanding other evidence presented as part of the prosecution's case. Any error on this point was not prejudicial.

*Id.* at 1376 (internal citations omitted).

This case differs somewhat from *Unruh* because the expert in *Unruh* did not apply the facts to the law and render a conclusion as to whether the defendant complied with the law, which is what defense expert Biles intends to do in this case. Still, *Unruh* demonstrates the discretion trial judges possess in making rulings regarding the admissibility of opinion testimony that arguably offers a legal conclusion. It

is noteworthy that the *Unruh* court, in affirming the lower court's ruling, focused on the accuracy and usefulness of the testimony.

It is well within this Court's discretion to exclude Biles' proffered testimony because it states a legal conclusion. Each of his three listed opinions purports to explain the meaning of the law and apply the facts to the law to render a legal conclusion regarding Grace's compliance with TSCA 8(e). Such testimony is excludable under *Scholl*. It is also within the Court's discretion to admit the testimony if it is accurate and would be helpful to the jury in deciding the issues. It is therefore necessary to consider whether the proffered testimony would aid the trier of fact as required by Fed.R.Evid. 702.

### b. Would Biles' testimony assist the trier of fact?

The Defendants argue that Biles' testimony is necessary to assist the jury in navigating the "complex web of laws, regulations, administrative commentary, guidance documents and EPA enforcement history" relating to TSCA 8(e). This characterization overstates the complexity of the law that the jury will be asked to apply in this case. The relevant authority that must guide the jury consists of the statute's text and the 1978 Policy Statement. It appears that Biles' proffered testimony, rather than simplifying the issues for the jury, would complicate the picture by discussing matters, such as "EPA enforcement history," that have no bearing on whether the Defendants violated TSCA 8(e). It would be like admitting testimony about DEA enforcement history in a drug conspiracy. The testimony has no bearing on whether the law has been violated in this particular case. Like the jury in *Scholl*, the jury in this case does not need assistance in applying the TSCA

8(e) standard and the 1978 Policy Statement. Because it does not assist the trier of fact, Biles' testimony is of dubious admissibility under Fed.R.Evid. 702.

#### c. Does Biles's testimony violate Rule 403?

The Government raises Fed.R.Evid. 403 as an additional ground for exclusion of Biles' testimony, arguing that his opinions would confuse the issues and mislead the jury. Assuming the Court finds Biles' testimony otherwise admissible, Rule 403 does not provide an independent basis for excluding it. The Court can avoid confusion among the jurors by explaining that the witness is merely stating his opinion and that the Court will ultimately instruct the jury as to the law to apply. Moreover, to the extent the Government views Biles' proffered testimony as misleading, it is free to present expert testimony of its own to rebut Biles' contentions, assuming the witness is qualified and the opinions were timely disclosed.

#### d. Government Exhibits 649 and 650

The Defendants argue that fairness requires that Biles be permitted to testify because the Government intends to put on testimony from its own expert stating that Grace's failures to report certain studies violated TSCA 8(e). The Defendants refer to Oscar Hernandez, the Director of EPA's Risk Assessment Division of the Office of Pollution Prevention and Toxics. Hernandez had not been disclosed as an expert, but is the author of two Certified Statements, Government Exhibits 649 and 650, that list studies, reports and memos that

Hernandez says should have been reported under TSCA.[6] While Hernandez's statements do not contain anything approaching the detailed interpretation of TSCA 8(e) offered by defense expert Biles, they are legal conclusions about Grace's compliance with the statute. As such, the Defendants argue, it would be unfair to allow Exhibits 649 and 650 into evidence but to exclude the Biles' opinion testimony.

This argument has been rendered moot in light of the Government's representation in oral argument that it will redact Exhibits 649 and 650 to remove any suggestion that Grace was required to submit the documents under TSCA. There will be no unfair advantage to the Government if Biles' opinions are excluded.

■ It is within the Court's discretion to permit or exclude Biles' proffered testimony. *Scholl* provides ample legal grounds for excluding the testimony because it states legal conclusions. On the other hand, no Federal Rule of Evidence expressly forbids such testimony. However, it is likely the jury could understand the law and apply the facts to it without the aid of expert testimony. Due to the questionable usefulness of the testimony and the risk of encroachment into the functions of the judge and jury, in my view the best course is to exclude Biles' opinion testimony because it is unhelpful to the jury under Rule 702 and because it states legal conclusions. Either side may introduce evidence of the text of TSCA 8(e) and the 1978 Policy Statement, but may not

---

**6.** Among other conclusions, the Exhibit 649 contains Hernandez's statement that "W.R. Grace and Company, as a manufacturer, processor, or distributor in commerce of vermiculite, was required to but did not report the information under the authority of section 8(e) of the Toxic Substances Control Act."

Exhibit 650 contains a similar statement that "W.R. Grace and Company was required to but, to the best of my knowledge, did not report the information under the authority of section 8(e) of the Toxic Substances Control Act."

elicit opinion testimony as to the meaning of either.[7]

## 2. Motion to exclude the testimony of Dr. Joseph Rodricks

The Government moves to exclude the proffered opinion testimony of defense expert Dr. Joseph Rodricks as inadmissible under Fed.R.Evid. 402, 403, 702 and 704. The Government objects to the following opinions offered by Dr. Rodricks:

It was not necessary for WR Grace to report the findings of excess disease and mortality among Libby employees (the Enbionics and the Monson studies) to the EPA under TCSA 8(e) because they were corroborative of the well-established adverse health effects of asbestos and tremolite asbestos already in the scientific literature. Additionally, it was not necessary for WR Grace to report the Fairleigh Dickinson animal study because it corroborated information already available about the health effects of tremolite asbestos in experimental animals. As for industrial hygiene and product testing data, that information need not have been reported under TSCA 8(e).

I have seen no evidence that the company's alleged failure to report the studies had a discernable impact on the government's risk assessment activities.

From my review, governmental agencies were aware of, and regulated, tremolite asbestos at Libby. Under WR Grace ownership of the Libby facility, the Montana Department of Health regularly inspected the Libby facility in the 1960s and 1970s, EPA first investigated the Libby site in 1975, MSHA (and its predecessor the Bureau of Mines) inspected the site regularly to monitor for asbestos starting in 1961, and the Public Health Service (later NIOSH) began investigations as early as the late 1960s. Rodricks Expert Disclosure at p. I–3. The Government also objects to the following "conclusions" offered on page IX–3 of Rodricks' expert report:

In summary, from the time WR Grace acquired the Libby Mine and Mill in 1963, and even prior to its ownership, numerous governmental agencies investigated the nature and magnitude of the health risk that might be posed by tremolite asbestos at Libby. These various activities involved regulatory inspections, to enforce applicable state and federal occupational health standards, and an investigation of potential adverse effects of tremolite asbestos exposure by the EPA.

I describe these activities to demonstrate that the situation in Libby was not shrouded in secrecy, that there were routine investigations from state and federal governmental agencies, and also to point out that government agencies, the EPA particularly, undertook no regulatory actions, at least until 1999, pursuant to any of its scientific findings after studying the Libby mine and mill.

The Government wants the proffered testimony excluded on the grounds that the testimony purports to instruct the jury on the law applicable to the case and apply the facts to the law, the testimony will not be helpful to the jury, and the testimony's probative value is substantially outweighed by the risk that it will confuse the issues and mislead the jury.

### a. Opinions as to the Defendants' TSCA 8(e) compliance

█ For the reasons set forth in the analysis relating the proffered testimony

---

**7.** This should not be construed as preventing any Defendant from testifying regarding his belief that a particular piece of information was or was not reportable under TSCA 8(e).

of Blake Biles, Dr. Rodricks' opinions as to whether Grace was required to report certain information to the EPA under TSCA 8(e) are inadmissible. This ruling does not prevent Dr. Rodricks, or any other properly disclosed and qualified defense witness, from opining as to the scientific similarity between information contained in Grace health studies and information known to the EPA or reported in scientific literature and cited in the abstract services listed in the 1978 Policy Statement. Such testimony can assist the jury in determining whether information is Grace's health studies is "corroborative" of other published scientific findings. The Government's motion to exclude Rodricks' testimony is granted as it relates to opinions about TSCA compliance.

### b. Opinion on the impact of Grace's non-disclosure on government risk assessment activities

Dr. Rodricks' statement with regard to the impact of Grace's non-disclosure on government risk assessment activities is not an opinion. Rodricks states that he has "seen no evidence" that Grace's failure to report hindered the government's risk assessment activities. The Government argues that the testimony is irrelevant to the obstruction charges in Counts V through VIII of the Superseding Indictment.[8] The Defendants do not disagree but say the testimony is relevant to the conspiracy to defraud charged in Count I because evidence that the government's risk assessment activities were not impacted shows that the government was not defrauded, which in turn raises doubt as to the Defendants' intent to defraud.

█ This is a fairly attenuated chain of inferences, but one the Defendants are

free to argue if the evidence provides even minimal support for it. It is a different question whether the Defendants can use expert testimony to make the point. Rodricks' opinion merely comments on the evidence or absence thereof relating to the impact on the government's risk assessment activities. Such testimony is excludable under Rule 702 because it does not assist the trier of fact; the jury can decide for itself whether the evidence shows an impact on the government's risk assessment activities. The motion to exclude Rodricks' testimony is granted on this issue.

### c. Opinion that the Libby asbestos problem "was not shrouded in secrecy"

Dr. Rodricks' opinion that "the situation in Libby was not shrouded in secrecy" is not the proper subject of expert testimony. The opinion states a conclusion about the evidence that the lay juror is competent to reach without the assistance of an expert. The Defendants argue that Dr. Rodricks' testimony is necessary to assist the jury because:

> [w]hile a jury can certainly understand, without expert assistance, that federal agencies visited Grace's operations in Libby, Montana, the jury cannot fully appreciate, without expert assistance, the relative depth and scope of the Government's involvement: Were the Government's historical investigations at Libby superficial or scientifically substantive? Were the investigations frequent or infrequent as compared to other regulatory assessments at sites other than Libby. [sic] To understand what these historical investigations and re-

---

8. Counts V–VIII allege obstruction of justice in violation of 18 U.S.C. §§ 1505 and 1515(b).

Superseding Indictment ¶¶ 191–198.

ports mean requires a scientific and regulatory frame of reference that a jury of non-scientists and non-regulators do not have.

Defs. Resp. at p. 5.

■ The Defendants' points are valid, and assuming that their witness is qualified and his opinions properly disclosed, he may opine as to the scientific depth and scope of the government's involvement at the Libby Mine. But Dr. Rodricks is not an expert on secrecy. It is up to the jury to decide, in light of Dr. Rodricks' testimony and all other evidence, to what extent governmental agencies were aware of the situation in Libby. Dr. Rodricks will not be allowed to give his opinion as to what conclusion the jury should reach on that question, either by stating that the Libby operation was not shrouded in secrecy or by giving his opinion as to what regulatory agencies knew. Such opinions are outside the witness' expertise and personal knowledge and are unhelpful to the jury and are therefore inadmissible under Fed.R.Evid. 602 and 702.

### 3. Motion to exclude testimony of Elliot Eder

■ Count VI of the Superseding Indictment alleges that Defendants Grace and Stringer obstructed justice in violation of 18 U.S.C. §§ 1505 and 1515(b) [9] by providing false and misleading information to a CERCLA 104(e) [10] Request for Information from the EPA. The Government alleges that Defendants Stringer and EPA made the following misleading statements in their CERCLA 104(e) response:

1. that W.R. GRACE did not provide vermiculite to the general public;

2. that W.R. GRACE employees did not regularly leave the mine with tremolite dust on their clothing;

3. that W.R. GRACE only informed EPA that it had provided vermiculite mill coarse tailings for use on the Libby High School running track, when in truth and in fact, W.R. GRACE had placed vermiculite mill coarse tailings at the Libby Junior High School running track and at the Plummer Elementary School ice skating rink;

4. that W.R. GRACE took actions to treat the roadway to the mine to minimize dust created by vehicular traffic, when in truth and in fact, W.R. GRACE used vermiculite mill tailings, to construct, surface and sand the roadway; and

9. Under 18 U.S.C. § 1505 it is illegal to "corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States...." For purposes of the statute, the term "corruptly" is defined as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515(b).

10. Section 104(e)(2) of CERCLA, 42 U.S.C. § 9604(e)(2), authorizes certain EPA personnel to "require any person who has or may have information relevant to any of the following to furnish, upon reasonable notice, information and documents relating to such matter:

(A) The identification, nature, and quantity of materials which have been or are generated, treated, stored, or disposed of at a vessel or facility or transported to a vessel or facility.

(B) The nature or extent of a release or threatened release of a hazardous substance or pollutant or contaminant at or from a vessel or facility.

(C) Information relating to the ability of a person to pay for or perform a cleanup."

5. that W.R. GRACE failed to inform EPA of air and environmental media sampling studies and results.

Superseding Indictment ¶ 194.

The Defendants are concerned that evidence of the CERCLA 104(e) process in this case, including consultations with EPA and Grace's many objections to the requests, may cause the layperson to conclude that the Defendants engaged in obstruction when in reality they were simply moving through the typical stages of responding to a CERCLA 104(e) request. To prevent the jury from reaching that conclusion, the Defendants intend to offer the testimony of Elliot Eder, an attorney specializing in CERCLA regulation and litigation. Eder's disclosure states that he will offer a range of opinions about the CERCLA 104(e) process, including EPA's expectations of an entity subject to a CERCLA 104(e) request, EPA's custom and practice in processing objections and responses to complex requests, and the usual custom and practice in responding to such requests. The Defendants hope that Eder's testimony will show the jury that what might appear to be begrudging compliance by Grace with the CERCLA 104(e) requests was in fact in accordance with EPA's expectations and standard practice. Such testimony, the Defendants argue, undermines the Government's allegation that the Defendants acted corruptly.

The Government argues that Eder's testimony is irrelevant because the allegation is not that the Defendants acted corruptly during the CERCLA 104(e) process, but rather that they acted corruptly by issuing false and misleading responses. However, to the extent the Government introduces evidence of the CERCLA 104(e) process rather than simply evidence of the responses, it may be useful for the jury to hear expert testimony explaining the process. It would not be appropriate for Eder or any other expert to opine that the Defendants' responses were truthful or that the Defendants complied with the law, but it does not run afoul of the prohibition on stating legal conclusions for Eder to testify as to the typical CERCLA 104(e) process.

Whether such testimony would be useful and admissible in this case depends on how the proof develops at trial. It is not the best use of the Court's resources to sift through Eder's voluminous opinions without the benefit of being able to evaluate them in light of the evidence. Accordingly, ruling on the motion is reserved until Eder's testimony is offered at trial.

## IV. Order

Based on the foregoing,

IT IS HEREBY ORDERED that

(1) the Defendants' motion to exclude evidence of health effects studies and product tests (Doc. No. 488) is DENIED;

(2) the Government's motion to exclude the testimony of Blake Biles (Doc. No. 463) is GRANTED as set forth above;

(3) the Government's motion to exclude the testimony of Joseph Rodricks (Doc. No. 464) is GRANTED as set forth above; and

(4) the Government's motion to exclude the testimony of Elliot Eder (Doc. No. 463) is reserved until trial.